**STATE of Missouri, Plaintiff–Respondent,**

v.

**Sandra ELMORE, Defendant–Appellant.**

No. 23671.

Missouri Court of Appeals,
Southern District,
Division One

March 27, 2001.

Motion for Rehearing or to Transfer to Supreme Court April 20, 2001.

Application to Transfer Denied May 29, 2001.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

SHRUM, Judge.

Sandra Elmore ("Defendant") was convicted, following a jury trial, of the Class C felony of possession of methamphetamine, a controlled substance, under § 195.202, RSMo 1994.[1] She appeals contending there was insufficient evidence to support the verdict and the trial court erred in admitting certain evidence and statements over her objections. We find sufficient evidence to support the verdict and no reversible error resulted from the admission of evidence. We affirm.

Defendant was at home asleep on the evening of April 10, 1998, when at 10:45 p.m. her husband ("Tom") came home and awakened her to go look at a house. Their present home was near foreclosure due to Tom's drug habit and failure of his mobile home business. Defendant went with Tom noting this was not unusual behavior for him because of his drug habit, and if she refused, he might have become violent. When the couple reached their destination, no one was there to show them the house. The couple then went to Wal Mart where Tom purchased "some pseudoephedrine," but Defendant did not know why.[2] Before the Wal Mart stop, the couple had stopped at a convenience store where Defendant purchased "Efidac," a sinus medication. Tom then received a page from a friend named Tom Williams ("Williams"). Defendant stated she wanted to go home, but Tom refused and the couple then drove to Williams' house. Tom and Williams talked about "some important business," until Tom asked Defendant to get out of the car and meet Williams. Defendant walked towards the shed behind the house and upon entering, immediately perceived that a "massive lab" was set up to produce methamphetamine. Defendant went back to the car and Tom followed. The couple left the Williams' residence and went to the "Voss Truck Port" where they bought some items to fix Defendant's pickup truck. Among these items were bottles of "Heet" and oil.[3]

By this time it was the early morning hours of April 11, 1998, and the pair decided to eat breakfast at the Voss truck stop. Tom received another page from Williams who wanted to meet them there. Defendant "knew [her] husband was involved

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. Pseudoephedrine is found in many over-the-counter medications, such as "Sudafed" which Tom purchased (four boxes) at Wal Mart. Pseudoephedrine is extracted from the pills during the process of manufacturing methamphetamine.

3. "Heet" is a fuel additive, but is commonly used in methamphetamine production to extract pseudoephedrine from over-the-counter cold pills.

with meth," but saw no harm involved in Williams coming to talk to them because "it didn't matter to me if [Williams] talked to [Tom]" while they were at the truck stop. Williams met them outside the Voss restaurant by Tom's car.

Sometime before Williams' arrival, Officer Mark Reynolds ("Reynolds") of the Missouri Highway Patrol received a radio dispatch that described a car that might be transporting illegal narcotics. Shortly after that, Reynolds received another dispatch that the car was located at the Voss truck stop, and he went there and located the car. Reynolds parked across the highway in order to observe the unoccupied vehicle. After about twenty minutes, Williams showed up and met Defendant and Tom by the car. The trio stood in a "circle" talking and looking nervous. Williams then gave Tom a bag which was put inside Tom's car. Defendant and Tom departed in Tom's car with Reynolds following closely behind.

Upon Tom's failure to signal while attempting to get on Interstate 44, Reynolds turned on his lights to pull the car over. Tom then accelerated to ninety miles per hour and the chase ensued for the next two miles. During the chase, Defendant was "frantically jumping from the front passenger seat to the rear of the vehicle" and throwing items out the window. Finally, Tom pulled over, and he and Defendant were then arrested. Reynolds recovered two bags containing methamphetamine; one from the passenger's seat and another from the side of the interstate. Also recovered in the search of the car were various items which were alleged to be used in the production of methamphetamine. While in custody, Defendant made incriminating statements which were introduced at trial. Defendant sought to exclude from evidence those items recovered in the search of the car and roadway, as well as two incriminating statements, but those objections were overruled. These are the subjects of Defendant's Points II and III; Point I relates to the sufficiency of the evidence. Our resolution of Points II and III will impact the discussion of Point I; therefore, we discuss the points in reverse order.

## POINT III: DEFENDANT'S ALLEGEDLY INADMISSIBLE STATEMENTS

■ Even though officer Reynolds advised Defendant of her constitutional rights per the *Miranda* warning at the time of her arrest, Defendant asserts the trial court erred by admitting into evidence two statements made by her because the statements were not "freely and voluntarily made," thus violating her rights under the federal and state constitutions.[4] Defendant claims that due to "the passage of time, her mental condition, the circumstances surrounding the interrogation, and the lack of subsequent reminders of her rights," she was "unaware" of her rights even though having been so advised upon arrest.

One of the statements about which Defendant complains was made while Defendant was talking to her husband at the county jail. Reynolds was nearby finishing his paperwork when he overheard Defendant say to Tom: "I knew this stuff was going to get us. Now I'm going to die in jail." In a futile attempt to support her point as to this statement, Defendant cites

---

4. The *Miranda* warning is that required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The relevant constitutional provisions are the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 19 of the Missouri Constitution.

*Miranda,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.[5] The following is an excerpt from *Miranda:*

> "Our holding ... briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.*"

384 U.S. at 443, 86 S.Ct. at 1612 (emphasis added).

■ The *Miranda* procedural safeguards are only applicable in the context of custodial interrogation or its functional equivalent. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). This is not the case here. It is true Defendant was in custody, but the statement was made to her husband and merely overheard by Reynolds. Inexplicably, Defendant fails to address this issue. Defendant's statement was not in response to any express questioning or its functional equivalent; therefore, *Miranda* does not apply. *See State v. Butler,* 660 S.W.2d 225, 228[3] (Mo.App.1983). Under the circumstances, the statement was voluntary, spontaneous, and properly admitted. *See State v. Gardner,* 741 S.W.2d 1, 3–4[2] (Mo.banc 1987).

■ The other statement which Defendant alleges was inadmissible was in response to a question asked by Reynolds. Reynolds testified he returned to the jail after searching the interstate and finding a bag containing methamphetamine, and asked Defendant if she threw it out of the car. Reynolds testified Defendant replied, "[Y]es, I told [another officer] that I only threw one out." Defendant attempts to explain the involuntariness of this statement by reliance upon her testimony that she never before had contact with police interrogation, her overall "hysterical" frame of mind, the hours of badgering by the police, and the general unfamiliarity of the situation.[6] However, during trial when Reynolds testified about the statement, Defendant did not object. Defendant's failure to timely object to Reynolds' testimony regarding this statement means any claim of error regarding its admission is unpreserved for our review. *Gardner,* 741 S.W.2d at 3[1]. Under the circumstances, our only review is for plain error.

■ Plain error review is limited to determining whether there was error affecting substantial rights that resulted in manifest injustice or miscarriage of justice. *State v. Gardner,* 955 S.W.2d 819, 825[1] (Mo.App.1997); Rule 29.12(b). "An error is only an injustice if it is prejudicial." *State v. Fuente,* 871 S.W.2d 438, 443 (Mo. banc 1994). Here, officer Reynolds gave Defendant her *Miranda* rights. Moreover, even if Defendant's statement to Reynolds was inadmissible due to its involuntary nature caused by post-*Miranda* circumstances—a finding we need not and do

---

**5.** Defendant also cites numerous Missouri cases involving the voluntariness of a confession. However, much like *Miranda,* these cases all involved situations of express questioning by law enforcement officers while the accused was in custody. These cases are inapposite for the same reason *Miranda* is inapplicable.

**6.** The record reveals Defendant was a well-educated woman who could remember certain specifics about the incidents pertaining to her arrest when beneficial to her case, but could not do so when detrimental.

not make—it is not apparent that its admission was prejudicial because there was ample other evidence, as discussed under Point I, for the jury to find Defendant guilty of possession of methamphetamine. *Id.* On this record, there is no way Defendant could have been prejudiced by the admission of this statement; consequently, the admission of such statement did not rise to the level of manifest injustice. *Id.* Point III is denied.

## POINT II: ALLEGED ERROR IN ADMISSION OF PHYSICAL EVIDENCE.

■ In Point II, Defendant contends the trial court erred by admitting into evidence certain items recovered during the search of the car and allowing testimony to the effect that these items could be used in the manufacture of methamphetamine.[7] Defendant claims the evidence had no probative value and was highly prejudicial because it was evidence of an uncharged crime or bad act; therefore, the evidence should have been excluded as irrelevant. We find no merit to this argument.

■ A trial court has broad discretion in ascertaining relevance and admissibility of evidence. *State v. Hayes,* 15 S.W.3d 779, 785[8] (Mo.App.2000). This court will not interfere with a ruling on the admissibility of evidence absent a clear showing of abuse of discretion. *Id.* at 785[9]. Evidence of contemporary possession of drug paraphernalia with possession of a controlled substance is relevant and admissible to show a defendant knowingly and intentionally possessed the controlled substance. *State v. Dowell,* 25 S.W.3d 594, 603[14] (Mo.App.2000). It is admissible to show the controlled substance was pos-

sessed with full knowledge of its illegal character. *State v. Flenoid,* 838 S.W.2d 462, 467 (Mo.App.1992).

■ Drug paraphernalia includes "all equipment, products and materials of any kind which are used, intended for use, or designed for use, in ... manufacturing, compounding, converting, producing, processing, preparing ... a controlled substance ... in violation of sections 195.005 to 195.425." § 195.010(17), RSMo Cum. Supp.1998. The fact the items to which this point refers can be personal items with personal uses does not preclude their having a nexus with criminal behavior. *State v. Mitchell,* 20 S.W.3d 546, 557 (Mo. App.2000). Such items relate to a defendant's awareness of the presence and nature of controlled substances found at the same location. *State v. Yahne,* 943 S.W.2d 741, 746 (Mo.App.1997). "Evidence which is colorless standing alone gains a new complexion when considered with other facts that are proved, and in turn, may corroborate the conclusions drawn from other facts." *U.S. v. Wood,* 834 F.2d 1382, 1386 (8th Cir.1987).

Defendant was charged with possession of methamphetamine, and the above-mentioned evidence tended to prove a material element of that crime. We find no abuse of discretion in its admittance as evidence. Point II is denied.

## POINT I: INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION?

■ In this point, Defendant asserts the evidence was insufficient to support the conviction of possession of methamphetamine. She claims the State did not prove "sufficient evidence from which a rational trier of fact could have reached a

---

7. These items were "pills, bottles of Heet, glass quart jar, plastic tubing, coffee filters, razor blades, and syringes."

'subjective state of near certitude' that [Defendant] knew of the presence and illegal nature of the methamphetamine."

■ On a challenge to the sufficiency of evidence, appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55[3] (Mo.banc 1989). The state must prove (1) a conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance; both possession and knowledge can be proven by circumstantial evidence. *State v. Purlee*, 839 S.W.2d 584, 587[3] (Mo.banc 1992).

Defendant does not seriously challenge the sufficiency of the evidence supporting the fact that she had "possession" of methamphetamine, nor do we think she could because she was seen throwing a bag containing methamphetamine out the window, and the other bag was found in her seat. *See* § 195.010(32); *State v. Booth*, 11 S.W.3d 887 (Mo.App.2000); *State v. Jackson*, 806 S.W.2d 426, 428 (Mo.App.1991). Instead, what she is challenging is the sufficiency of the evidence as it relates to her knowledge of the presence of the illegal drug.

■ Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband. *State v. Rivers*, 554 S.W.2d 548, 551 (Mo.App.1977). In the absence of incriminating circumstances demonstrating a defendant's knowledge, no submissible case is made. *State v. Wiley*, 522 S.W.2d 281, 292 (Mo.banc 1975).

There is ample circumstantial evidence in this record upon which a reasonable juror could infer Defendant in fact knew of the presence of the illegal methamphetamine. Without considering Defendant's statement to Reynolds that she threw one bag containing methamphetamine out the window of the car, Defendant made several other incriminating statements as discussed earlier in this opinion. Defendant was in a vehicle with necessary ingredients in the manufacturing of methamphetamine and admitted to being at a "massive" drug lab earlier that evening. Also, she stated she was a methamphetamine user, who had used it earlier that evening. Likewise, she and her husband, whom she knew was a known meth user, met with the owner of that drug lab who delivered to her husband a gray bag. In conjunction with this meeting, she was acting nervously. Furthermore, a bag of methamphetamine was found in Defendant's seat, and she was seen throwing another bag of the substance out the window while being chased by the police. After the high-speed chase ended, she was found with drug paraphernalia in her purse. Finally during her testimony, she admitted she knew her husband was going into Wal Mart to purchase "psuedoephedrine." There is no explanation why she used this term instead of "cold pills." If this evidence was not sufficient, we cannot fathom what else besides a direct confession would have been needed.

■ In her brief, Defendant attempts to distract this court's attention by reference to testimony given by her husband and her. Both the testimony and the brief unartfully attempt to explain, in this factual context, how she could not have known of the presence of the illegal drugs. Defendant disregards the reasonable inferences which can be drawn from the above evidence, and argues the testimony favor-

able to her case caused the jury's reliance on incriminating circumstantial evidence to be insufficient. Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the jury and are not subject to review on appeal. *State v. Perkins*, 996 S.W.2d 753, 754 (Mo.App.1999). The jury was free to disbelieve Defendant's testimony, as well as her husband's, and accept as true the evidence of the state. *State v. Mishler*, 908 S.W.2d 888, 893[9] (Mo.App. 1995).[8]

The evidence was sufficient from which a jury could find Defendant guilty of possession of methamphetamine beyond a reasonable doubt. Point I is denied.

The judgment is affirmed.

PARRISH, P.J. and MONTGOMERY, J., concurs.

### OPINION ON MOTION FOR REHEARING OR TRANSFER

Pursuant to Missouri Supreme Court Rules 84.17 and 83.02 (2001), Defendant requests that we rehear this case or, in the alternative, transfer it to the Supreme Court of Missouri. In support, Defendant complains this court disregarded relevant authority, i.e., *State v.. McClain*, 968 S.W.2d 225 (Mo.App.1998), and ignored her argument based on *McClain*. Defendant asserts *McClain* is factually similar to her case and supports her position that she did not have "knowledge of the presence or nature of the drug [methamphet-

amine] in the car and along the roadway." We disagree. *McClain* was not addressed in the principal opinion because the facts and issues presented in *McClain* are so factually dissimilar from the facts and issues here as to render it irrelevant as authority for Defendant's arguments.

In *McClain*, the defendant was convicted of attempting to manufacture methamphetamine in violation of § 195.211, RSMo (1994).[1] As part of the "attempted manufacturing" charge, the State claimed McClain had "possession" of the necessary precursors to manufacture the drug. When McClain was searched, methamphetamine was found on his person. The State argued that methamphetamine found on McClain linked him to a blue bag containing the manufacturing precursors. However, the bag was found in a closet located within an office adjacent to a public place of business where McClain was arrested. No evidence showed McClain had regular access to or use or control of the place of business. The State pointed to evidence that when the bag containing the precursors was found, it was unzipped. From that the State suggested it was reasonable to infer McClain had knowledge of the bag's contents and the nature or use to which the contents could be put. *Id.* at 227. This court found such argument unpersuasive because nothing in the evidence indicated the bag was unzipped when McClain and his companions arrived at the garage. Continuing, we noted:

---

**8.** We find this oft-cited proposition rings truest in a case such as this where the testimony of the two primary, exculpatory witnesses was contradictory, the witnesses had "selective memories," and one witness was (1) convicted of multiple felonies involving dishonesty including perjury, (2) admittedly had nothing to lose by testifying, (3) was the husband of the defendant, and (4) was addict-

ed to and using drugs at the time the incidents occurred to which his testimony related.

**1.** The charge against McClain arose from the same incident as the charges against the accused in *State v. Janson*, 964 S.W.2d 552 (Mo.App.1998), and the accused in *State v. Condict*, 952 S.W.2d 784 (Mo.App.1997).

"[E]ven if [McClain] saw the contents [of the blue bag], and even if he recognized them as items used to manufacture methamphetamine, such knowledge alone does not support a finding that [McClain] had possession of the items."

"As to [McClain's] statement to [police] that J brought the blue bag into the garage, the State fails to explain how such statement indicates [McClain] possessed the bag or its contents. The statement reveals only that the bag was behind the garage and J brought it inside. The statement does not indicate [McClain] ever had joint possession with J of the bag or its contents."

*Id.* at 227.

Thus, the reasons for reversal in *McClain* had two prongs, i.e., insufficient proof of McClain's *knowledge* of the contents of the bag *and* insufficient evidence that McClain ever had *possession* of the bag and its contents.

As stated earlier, these are not the facts and issues presented here. Defendant admits there was sufficient evidence to prove she possessed methamphetamine. She claims, however, there was insufficient evidence to support a finding that she was aware of the illegal nature of the substance. The factual distinctions between *McClain* and this case render *McClain* inapposite as authority for Defendant's argument. On the other hand, the authorities cited in the principal opinion, when read in the factual context of this case, firmly support a finding that Defendant knew the items she possessed contained illicit drugs.

Defendant's motion for rehearing and, in the alternative, transfer is denied.