STATE of Missouri, Plaintiff–Respondent

v.

**Jesse Vohn DORRIS, Defendant–Appellant.**

No. SD 29094.

Missouri Court of Appeals, Southern District, Division Two.

March 2, 2009.

---

4. This resolution of Claimant's second point renders his third point moot.

Margaret M. Johnston, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James B. Farnsworth, Asst. Atty. Gen., Jefferson City, for Respondent.

JOHN E. PARRISH, Judge.

Jesse Vohn Dorris (defendant) was convicted of possession of anhydrous ammonia in a nonapproved container.[1] § 578.154, RSMo 2000. Defendant waived trial by jury and was tried by the court. This court affirms.

Defendant asserts that the evidence was not sufficient to prove his guilt.

When reviewing a challenge to the sufficiency of the evidence, this Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). All evidence and inferences to the contrary are disregarded. *Id.* This Court does not weigh the evidence. Appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo.banc 1989).

In a case tried without a jury, the trial court's findings have the force and effect of the verdict of a jury. *Rule 27.01(b)*. The credibility and weight of testimony are for the fact-finder to determine. *Dulany* at 55. The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. *Id.*

*State v. Crawford*, 68 S.W.3d 406, 407–08 (Mo.banc 2002).

Delta, Missouri, Police Chief Verlan Graham was on patrol the evening of February 16, 2007. He had pulled into a gas station parking lot when he observed a green van "[d]oing approximately 42, 43 miles an hour in a 35 miles an hour zone." He pulled behind the van. He observed a passenger in the van moving around inside the vehicle. Chief Graham activated his lights. He explained:

---

1. Defendant was also initially charged with the class C felony of possession of a precursor ingredient of methamphetamine with intent to manufacture methamphetamine; however, the state *nolle prosequied* that charge prior to commencement of trial.

When I activated my lights I noticed they started to pull over in the gas station area where it was lit up. They pulled over. As they pulled over I called the plates in. They moved back on the street again and then they moved down[,] I'm going to say 200 yards or so[,] where the Corner Pocket parking lot was.

And then they took and pulled in and made an angle where it was dark at. They made an angle to where the driver's door was kind of facing to me when I couldn't get in the whole vehicle. At that point is when I approached the vehicle.

Chief Graham observed the passenger in the van continuing to move as he approached the vehicle. He walked to the driver's window. The driver was Cindy Pender. Defendant was in the van seated next to Ms. Pender. Chief Graham was acquainted with defendant.

Ms. Pender did not produce a driver's license. After Chief Graham ran a record's check that showed her "not on file," she admitted she did not have a license. Ms. Pender was escorted to Chief Graham's vehicle so that he could obtain the information necessary to write a summons for driving without a license. Defendant was instructed to remain in the van.

As Chief Graham was attempting to write the summons, he saw defendant walk around the passenger-side of the van and approach the rear of the vehicle. Defendant was instructed to get back in the van. "[Defendant] said he was just wanting to know if there was a problem or something. He got back in the vehicle. He complied."

The chief completed the summons and gave it to Ms. Pender. He had also run a record's check on defendant and learned that defendant did not have a driver's license. Chief Graham told Ms. Pender to move the van to a different area of the parking lot; that he would let her use his telephone to call someone to pick her up.

Chief Graham was asked the following questions and gave the following answers.

Q. [by the assistant prosecuting attorney] Did she pull the vehicle over?

A. No, ma'am. What happened at that point I sit [sic] there for a few minutes. The vehicle didn't move and nothing. So I backed my patrol car up. As I backed it up and moved it around I figured maybe there [sic] were waiting for me to move out of the way.

As I moved around to the right side of the vehicle is when I spotted [a] blue container under the passenger side of the vehicle.

Q. At this point did you turn back around?

A. At that point once I spotted the container I hit my overhead lights, my take-down lights, which lit up the whole vehicle. I exited my vehicle and walked up back to their passenger side of the vehicle.

. . .

Q. Had you been patrolling that parking lot moments before you pulled them over?

A. Yes, ma'am. Approximately two or three minutes. It don't take long to get from where I went to where I was.

Q. And when you were patrolling through that parking lot did you see this blue container you speak up [sic]?

A. No, ma'am, I did not.

Chief Graham got out of his patrol car and walked along the passenger-side of the van. He put one hand on the door of the van, reached down and picked up the blue container with his other hand. He described the container as "a coffee container." He opened it and smelled ammonia. He arrested defendant.

The temperature was about 30 degrees, but the container was not cool to the touch when Chief Graham picked it up. He explained, "If it had been out there any period of time outside the container would have been cold." The container appeared new and clean. It had no marks on it. It did not appear to have been run over, although Chief Graham believed the van could not have gotten to the location where it was parked without having run over the container; that the container could not have been where the chief found it at the time the van stopped.

Missouri Highway Patrol Sgt. Brenda Cohn arrived to assist with what Chief Graham believed to be hazardous material in the container. She verified that the content was anhydrous ammonia, a chemical used for agricultural purposes that is also a precursor ingredient for the manufacture of methamphetamine.

Sgt. Cohn searched the van. She noticed a powerful odor of vanilla body spray when she opened the van door. She described it as a "masking scent." She found two pairs of pliers, a pipe wrench, and a flashlight in the passenger compartment of the van. She found a white powder in a cup holder in the back of the van. Sgt. Cohn told the trial court that these were items commonly used by individuals arrested for stealing anhydrous ammonia. She explained, "I have seen those types of tools and ingredients in the past when I worked anhydrous ammonia theft investigation." She seized the tools.

Defendant presented no evidence, but filed a Motion for Acquittal at the Close of the State's Case and further submitted a Motion for Acquittal at the Close of All the Evidence. The motions were denied.

■ Defendant's first point on appeal argues that the trial court erred in denying defendant's motion for judgment of acquittal at the close of all the evidence "in

that the evidence did not prove beyond a reasonable doubt that [defendant] possessed the thermos of anhydrous ammonia found under the van; both [defendant] and the driver were occupying the van but there was no evidence that either actually possessed the thermos, that [defendant] or the driver knew there was anhydrous ammonia in the thermos, or that either had the intent to exercise control over it."

Defendant relies on cases involving possession of controlled substances in contending that the state was required to show he had possession of the container and knew what it contained in order to prove that he committed the offense of possession of anhydrous ammonia in a nonapproved container. This court agrees that the principles applicable to possession of controlled substances are apropos to possession of other illegal materials; that those principles are applicable to this case.

In *State v. McLane*, 136 S.W.3d 170 (Mo.App.2004), the court explained the requirements for finding a person guilty of possessing controlled substances.

"To convict a person of possessing a controlled substance, the state must prove that the person had conscious and intentional possession of the substance, either actual or constructive, and was aware of the substance's presence and nature." *State v. Belton*, 108 S.W.3d 171, 176 (Mo.App.2003). "Both possession and knowledge may be proved by circumstantial evidence." *State v. Camerer*, 29 S.W.3d [422] at 425 [(Mo.App. 2000)]. "Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband." *State v.*

*Elmore,* 43 S.W.3d 421, 427 (Mo.App. 2001).

*Id.* at 173.

Here, Chief Graham had patrolled the parking lot where the van in which defendant was a passenger was stopped only two or three minutes prior to the event that produced this appeal. There is no evidence that the container that is the basis for defendant's conviction was present at the time of the earlier patrol. Chief Graham saw no such container.

When the van in which defendant was a passenger stopped in response to Chief Graham's signal, it first paused at a location other than where it finally parked, then proceeded to an area that was darker. The van was then parked at an angle that prevented Chief Graham from observing its passenger side. After Chief Graham failed to find a record of a driver's license issued to Ms. Pender, and after she had acknowledged she did not have a license, she was taken to his patrol car in order for him to do paper work required to issue a summons. Defendant was told to remain in the van.

When defendant appeared at the rear of the van on its passenger side, he said he wanted to see if there was a problem. This occurred notwithstanding that Ms. Pender had said she did not have a driver's license while still in the van seated next to defendant. Upon being directed to return to the van, defendant did so.

Ms. Pender was given a summons. She was told to move the van to another location on the parking lot and was offered use of a phone to arrange a ride. There was a delay in her moving the van. Chief Graham, thinking she might consider his patrol car to be in her way, began to move the patrol car. As he began to move his patrol car, he reached a location where he could see along the passenger side of the van and observed the blue container in question beneath the side of the van, the side from which defendant had come when he had earlier appeared at the back of the van. When Chief Graham approached the van, he picked up the container. It appeared new and was warm to the touch as if it had not been outside for sufficient time to cool in the 30 degree weather.

There was sufficient evidence for a reasonable fact-finder to conclude that defendant had possessed the container and had placed it beneath the van. *See State v. Sours,* 946 S.W.2d 747, 752–53 (Mo.App. 1997). The blue container was found at a location where it could not have been when the van was parked, a location that had been viewed by Chief Graham a short time earlier, two or three minutes prior to when he initially stopped the van. Defendant was the only person who had been outside the van on its passenger side before the container was discovered. There was sufficient evidence from which a reasonable juror could have concluded that defendant had possessed and maintained control over the container in placing it where it was discovered by Chief Graham.

■ The state was also required to prove defendant was aware of the presence and nature of the substance in the container. *State v. Elmore, supra.* Awareness of the presence and the nature of the contents of the container may be shown by circumstantial evidence. *Id.* Here, as in *State v. McLane, supra,* the evidence demonstrated that defendant tried to surreptitiously dispose of the container. The attempt to get rid of the container suggests that defendant not only knew the nature of its contents, but that possession of the container violated the law. *McLane,* 136 S.W.3d at 174. *See also State v. Camerer, supra* at 426; *State v. Elmore, supra.* Likewise, the masking odor of vanilla body spray inside the van permits a reasonable

inference that its use was intended to dispel what was described as the powerful odor that anhydrous ammonia produces.

The facts in *State v. McLane* are similar to those in this case. In McLane, the passenger-side window in a vehicle was seen going down and then back to its closed position while the officer who had stopped the vehicle was distracted by the driver. The weather was cold. Upon walking to the passenger side of the vehicle, a green change purse was found that contained a controlled substance. The purse was warm to the touch although the weather was cold and snow was on the ground. The purse was clean and revealed no sign that it had been at the location where found for an appreciable time. The evidence in *McLane* was sufficient to convict the passenger of possession of marijuana. The circumstances in *McLane* were, as suggested by the state, strikingly similar to those in this case.

There was sufficient evidence from which a reasonable juror may have found that defendant possessed the blue container knowing that it contained anhydrous ammonia. Point I is denied.

■ Defendant's remaining point contends the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because "the State presented no evidence that the thermos containing anhydrous ammonia was a 'nonapproved container' that was not designed, fabricated, tested, constructed, marked and placarded in accordance with the United States Department of Transportation Hazardous Materials regulations contained in CFR 49 Parts 100 to 185 and approved for the storage and transportation of anhydrous ammonia." Defendant argues that because the federal regulations were not in evidence and because there was no testimony concerning what was required for a container to meet the required standards for storage of anhydrous ammonia, the evidence was not sufficient for him to have been convicted of possession of anhydrous ammonia in a nonapproved container.

Defendant was found guilty of possession of anhydrous ammonia in a nonapproved container pursuant to § 578.154, RSMo Supp.2004. The statute states:

1. A person commits the crime of possession of anhydrous ammonia in a nonapproved container if he or she possesses any quantity of anhydrous ammonia in a cylinder or other portable container that was not designed, fabricated, tested, constructed, marked and placarded in accordance with the United States Department of Transportation Hazardous Materials regulations contained in CFR 49 Parts 100 to 185, revised as of October 1, 2002, which are herein incorporated by reference, and approved for the storage and transportation of anhydrous ammonia, or any container that is not a tank truck, tank trailer, rail tank car, bulk storage tank, field (nurse) tank or field applicator.

2. Cylinder and other portable container valves and other fittings, or hoses attached thereto, used in anhydrous ammonia service shall be constructed of material resistant to anhydrous ammonia and shall not be constructed of brass, copper, silver, zinc, or other material subject to attack by ammonia. Each cylinder utilized for the storage and transportation of anhydrous ammonia shall be labeled, in a conspicuous location, with the words "ANHYDROUS AMMONIA" or "CAUTION: ANHYDROUS AMMONIA" and the UN number 1005 (UN 1005).

3. A violation of this section is a class D felony.

Defendant does not contest that the container on which his conviction is based contained anhydrous ammonia. Eight-by-ten-inch colored photographs of the container were admitted in evidence as State's Exhibits Nos. 1 and 2. Those exhibits have been deposited with this court. The container is cylindrical in shape. It is unlabeled and, as was characterized by Chief Graham's testimony, has the appearance of "a coffee container." As such, the container was not labeled as required by § 578.154.2. Section 578.154.3 provides that a violation of § 578.154 is a class D Felony. Point II is denied. The judgment of conviction is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.