

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD32723 |
| | ) | |
| BRANDON L. GOFF, | ) | Filed July 11, 2014 |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Jack A. L. Goodman, Circuit Judge

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Brandon L. Goff ("Defendant") was found guilty by a jury of the class C felony of possession of a controlled substance ("Count I"), *see* section 195.202, RSMo 2000, and the class A misdemeanor of possession of drug paraphernalia with intent to use ("Count II"), *see* section 195.233, RSMo 2000. He was sentenced by the trial court to serve concurrent sentences of ninety days in the county jail on both counts. On appeal, Defendant challenges the sufficiency of the evidence supporting his convictions on both counts and the trial court's imposition of a ninety-day jail sentence on his conviction under Count II after the jury recommended that a fine, "in an amount to be determined by the court," be imposed rather than imprisonment for that conviction. Finding no merit in Defendant's first two points challenging the sufficiency of the evidence, but that the trial

court plainly erred in sentencing Defendant to imprisonment on Count II, we affirm Defendant's conviction on Count I and the verdict of guilty on Count II and remand for re-sentencing on Count II.

### Factual and Procedural Background

The evidence, viewed in the light most favorable to the jury's verdict, *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008), established the following. On July 9, 2009, Detective Chad Garoutte with the Lawrence County Sheriff's Department was dispatched to investigate a report of a subject at a TA Truck Stop driving a white Dodge pickup truck who "was acting weird" and was last seen traveling south on Highway 39 out of Mount Vernon. A description of the vehicle was provided, and when Detective Garoutte saw the truck, he turned his vehicle around to follow and observed the truck cross the center line and weave over to cross the fog line on the shoulder of the highway. Detective Garoutte activated his emergency lights, and the driver, identified as Defendant, turned the pickup into a parking lot. The detective pulled in behind so that his vehicle was "kind of facing the driver's side door" of Defendant's truck. When Detective Garoutte approached Defendant and asked for his driver's license, Defendant handed him a cell phone "as if he didn't understand the question or what was going on." Garoutte repeated his request for Defendant's license, but when Defendant began digging into a black backpack situated next to him in the driver's seat, Detective Garoutte ordered Defendant out of the vehicle. Defendant complied.

The driver's-side door remained open after Defendant exited, and Detective Garoutte observed a female passenger in the truck who was later identified as Tara Vaughn. The detective remained in front of his vehicle with Defendant, and as he talked to Defendant, he was able to observe Vaughn, who remained in the truck. Detective

2

Garoutte described Defendant as "fidgeting constantly" and "saying something that wasn't making any sense" and "talking about things that were like off the wall[.]" Defendant told Garoutte "he was looking for a phone line or a phone box or something to that effect." The detective called for backup after observing Defendant's unusual behavior, and after just a few minutes, Missouri State Highway Patrol Trooper Robert Creasy arrived.

Trooper Creasy stayed with Defendant as Detective Garoutte approached Vaughn and directed her to step out of the vehicle. Trooper Creasy observed that Defendant "seemed excessively nervous for a traffic stop[,]" and "fidgety and kind of evasive with his answers to the questions" asked.

In the meantime, Trooper Creasy asked for and received Defendant's consent to search the vehicle and its contents. In the cab of the pickup, he retrieved the black backpack. Inside, Trooper Creasy found a small black bag that contained "[a] rolled up Nike" sock in which he found "a needle and . . . a small plastic bag that contained a yellow substance." When field-tested, that substance was identified as methamphetamine. A syringe was also found within the sock. In addition, two empty prescription pill bottles bearing Defendant's name were found in "the bag[,]" and another pill bottle was found on the truck's seat. When Defendant was asked "if that was his bag[,]" Defendant affirmed that it was his. Detective Garoutte asked him numerous times, and each time, Defendant admitted that it was his.

Defendant was placed under arrest for possession of a controlled substance and paraphernalia and transported to the Lawrence County Sheriff's Department, where he was booked.

Defendant was charged with the class C felony of possession of a controlled substance and the class A misdemeanor of possession of drug paraphernalia with intent to use. During the jury trial on these charges, Defendant testified that when the officer stopped him and asked for his identification,

> I proceeded to look through my backpack which I kept it -- the truck was a standard, a five speed. I just always kept it right there [referring to just next to his right leg] with my ID, wallet, money, everything there, suntan lotion. Anyway so I just started rummaging through it. At that time he stopped me and asked me to leave or get out of the vehicle.

Defendant further testified that he took his backpack with him regularly and that

> almost every day I would bring a change of clothes because I work outside and get really dirty. So I would bring a change of clothes with me each day. Like I said, I keep my wallet in there, suntan lotion. I don't like stuff in my pockets because I do a lot of digging. Any change or anything.

Tara Vaughn testified that she did not remember if she and Defendant did any drugs that morning before the stop "because [she] was still high from the previous use whenever that was the day before." According to Vaughn, both she and Defendant had used the drugs intravenously the night before. She testified that Defendant's driving that morning was "[s]cary" and that they "were going all over the place. . . . [and] weren't on the road." Vaughn denied placing any drugs in a backpack, denied the methamphetamine found in the backpack was hers, and testified that "[i]t would have had to have been [Defendant's]."

The jury returned a guilty verdict on Count I and recommended a sentence of "[i]mprisonment in the county jail for a term of three months." On Count II, the jury returned a verdict of guilty and recommended a sentence of "[n]o imprisonment but a fine, in an amount to be determined by the court."

4

Defendant was sentenced by the trial court "to a term of 90 days in the Lawrence County Jail per count, to be served concurrently." Defendant timely appealed.

## Discussion

### *Points I and II – Sufficient Evidence Supported Findings of Guilt*

In his first point relied on, Defendant contends that the trial court erred in overruling his motion for judgment of acquittal "at the close of all the evidence" on Count I, alleging that "the evidence was insufficient to allow a reasonable juror to find each element of the charge beyond a reasonable doubt[.]" Defendant asserts, "In that no methamphetamine was found on the person of Appellant, he did not have actual possession of it." Thus, Defendant contends, "the State was required to prove that [Defendant] had constructive possession of the substance in order to support the conviction."

In his second point, Defendant raises the same claim of error, insufficiency of the evidence, as it relates to Count II, possession of paraphernalia with intent to use. Therein, Defendant argues that "the analysis presented in Argument I of this Brief regarding the count for possession of a controlled substance is equally applicable to this count for possession of paraphernalia, . . . accordingly, it is hereby realleged and incorporated by reference therein."

In both points, Defendant contends that

the incriminating circumstances of the accessibility of [Defendant's] backpack in the pickup, the presence of [Defendant's] prescription pill bottles in the backpack, the denial of ownership of the [controlled substance and drug paraphernalia] by Tara Vaughn, and the nervousness and disorientation of [Defendant] did not establish beyond a reasonable doubt that [Defendant] had knowledge and control over the [controlled substance and drug paraphernalia] found in a backpack located in a jointly-occupied motor vehicle.

5

We address both points together.

"When reviewing whether sufficient evidence supports a criminal conviction, this Court gives great deference to the trier of fact." *State v. Stover*, 388 S.W.3d 138, 146 (Mo. banc 2012). "Appellate review 'is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009)). "In applying this standard, 'the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence[,] and disregards all evidence and inferences to the contrary.'" *Id.* (quoting *Oliver*, 293 S.W.3d at 444).

On a challenge to the sufficiency of the evidence, this Court does not weigh the evidence, rather, "[t]he credibility and weight of testimony are for the jury to determine." *State v. Arnold*, 397 S.W.3d 521, 524 (Mo.App. 2013). The jury may believe some, all, or none of the testimony of a witness and may apply its credibility and weight of evidence determinations in consideration of the facts, circumstances, and other testimony presented. *Id.*

Initially, we note that Defendant supports his claims of error in both points with trial witness testimony unfavorable and contrary to the jury's verdict. "Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the jury and are not subject to review on appeal." *State v. Elmore*, 43 S.W.3d 421, 428 (Mo.App. 2001). The jury was free to disbelieve Defendant's testimony "and [to] accept as true the evidence of the state." *Id.* Because Defendant's argument goes to the credibility and weight of the evidence, it "was one to be argued to the jury.

6

Conflicts in the evidence are for the jury to decide." *State v. Morgan*, 366 S.W.3d 565, 575 (Mo.App. 2012). "It is not our function, as a reviewing court, to resolve conflicts in the evidence and decide the credibility of witnesses to determine whether the defendant is guilty beyond a reasonable doubt." *Id.* "It is axiomatic that 'testimony of a single witness may be sufficient to constitute substantial evidence to make a submissible case.'" *Id.* (quoting *State v. Ervin*, 835 S.W.2d 905, 921 (Mo. banc 1992)).

Section 195.202.1, RSMo 2000, provides that "it is unlawful for any person to possess or have under his control a controlled substance." Applicable to the paraphernalia possession charge against Defendant, section 195.233 provides that ""[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to . . . ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation controlled substance[.]" Section 195.233.1, RSMo 2000. Missouri courts "employ the same analysis when reviewing the question of whether [a defendant] possessed drug paraphernalia as when determining whether [a defendant] possessed a controlled substance." *State v. Power*, 281 S.W.3d 843, 848 (Mo.App. 2009).

"To support any charge of possession, 'it is necessary to prove that the accused knew of the presence of the forbidden substance and that the same was under his control.'" *State v. Politte*, 391 S.W.3d 537, 538 (Mo.App. 2013).

> "To convict a person of possessing a controlled substance, the state must prove that the person had conscious and intentional possession of the substance, either actual or constructive, and was aware of the substance's presence and nature." *State v. Belton*, 108 S.W.3d 171, 176 (Mo.App. 2003). "Both possession and knowledge may be proved by circumstantial evidence." *State v. Camerer*, 29 S.W.3d [422,] 425 [Mo.App. 2000]. "Proof of a defendant's knowledge of the presence and character of a substance is normally supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew

7

of the existence of the contraband." *State v. Elmore*, 43 S.W.3d 421, 427 (Mo.App. 2001).

**State v. McLane**, 136 S.W.3d 170, 173 (Mo.App. 2004). "'[C]ircumstantial evidence is afforded the same weight as direct evidence.'" **State v. Arnold**, 397 S.W.3d 521, 525 (Mo.App. 2013) (quoting **State v. Stewart**, 265 S.W.3d 309, 314 (Mo.App. 2008)).

Defendant bases his claim of error and argument in both points on his contention that he did not have actual possession, thus the State was required to prove constructive possession. In its response, the State relied on a contention that Defendant constructively possessed the methamphetamine and paraphernalia, citing the circumstantial evidence and inferences derived therefrom to support Defendant's convictions. Both parties discussed the ambiguities in the testimony related to the location of the backpack in the vehicle once Defendant exited.[1] Detective Garoutte described the backpack as being "in the driver's seat next to [Defendant] and the passenger in between the seats there." Trooper Creasy's recollection was that the backpack was positioned "behind the driver seat," but he stated he could not specifically recall. The backpack's proximity to Defendant's passenger and her access to it were crucial in Defendant's argument that control and access were not solely Defendant's.

---

[1] "'Proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found.'" **State v. Stover**, 388 S.W.3d 138, 147 (Mo. banc 2012) (quoting **State v. Purlee**, 839 S.W.2d 584, 588 (Mo. banc 1992)). "'Joint control over the area where the drugs were found will not preclude a showing of control, so long as further evidence connects defendant with the illegal substances.'" **State v. Coleman**, 263 S.W.3d 680, 684 (Mo.App. 2008) (quoting **State v. Smith**, 11 S.W.3d 733, 737 (Mo.App. 1999)). In cases where the defendant did not have exclusive access to and control over the vehicle, "the state 'must prove additional circumstances to inculpate the accused.'" **State v. Hernandez**, 880 S.W.2d 336, 339 (Mo.App. 1994) (quoting **State v. Harris**, 807 S.W.2d 528, 530 (Mo.App. 1991)). "While the circumstances need not be absolutely conclusive of guilt, they need not demonstrate impossibility of innocence; while the jury may have chosen to acquit here, they did not." *Id.* In proving constructive possession, there is "no precise formula, and we look to the facts of each case in determining if the totality of the circumstances supports the finding of possession." **State v. Kerns**, 389 S.W.3d 244, 248 (Mo.App. 2012).

8

The parties' contentions that Defendant did not have actual possession and that the State was required to prove Defendant had constructive possession, however, miss the mark. Under the facts here, there was sufficient evidence to support that Defendant had actual possession of both the methamphetamine and paraphernalia.

"A person has actual possession if he has the substance on his person or within easy reach and convenient control." Section 195.010(34), RSMo Supp. 2001; *see also* **State v. Jackson**, 806 S.W.2d 426, 428 (Mo.App. 1991) ("Possession is established if the person has the substance on his person or within easy reach and convenient control.").

Defendant admitted to the jury it was his backpack, he kept his personal items in it on a regular and daily basis and, when it was in his truck, he always kept it next to his right leg. Defendant also told the jury that when Detective Garoutte requested Defendant's identification, he opened his backpack and began "rummaging through it[.]" Detective Garoutte testified that Defendant accessed his backpack when "he started to dig into a bag that was next to him[]" after Garoutte advised Defendant that he needed to see Defendant's driver's license. Tara Vaughn, the only other person near Defendant's backpack that morning, testified that she did not put any drugs in the backpack and that any drugs in it had to belong to Defendant. From this testimony, a juror could reasonably infer beyond a reasonable doubt that the drugs and paraphernalia were in Defendant's backpack at the time Defendant opened it and began rummaging and digging in it in order to retrieve his driver's license.

Defendant's action of rummaging and digging into the backpack was direct evidence of actual possession, "however fleeting," because it established that the backpack and its contents were within easy reach of Defendant and that Defendant was

9

exercising control over his backpack and its contents, which included "exercising control over the drugs" that were in the backpack at that time and found by Trooper Creasey in that backpack just minutes later.[2] *See* **State v. Ross**, 292 S.W.3d 521, 524 (Mo.App. 2009). "[A]n exercise of control over the drugs is relevant to a determination of possession of the drugs." *Id.*; section 195.202. *See also* **State v. Camerer**, 29 S.W.3d 422, 425 (Mo.App. 2000) (stating that evidence that the defendant was the person who had tossed a backpack from a pickup window after a patrol car appeared behind the pickup was sufficient to support a finding that the defendant "had the backpack within easy reach and convenient control."); **McLane**, 136 S.W.3d at 173 (concluding that the defendant's action of throwing a change purse that was found to contain methamphetamine out of vehicle's window after being stopped by law enforcement was sufficient evidence to establish the defendant had actual possession of the drug in that he "would have had to handle it and maintain control of it.").

To support both convictions, the State was also required to prove that Defendant was aware of the presence and nature of the substance and paraphernalia. "[A]ctual possession cannot be established without proof that the defendant had 'knowledge of the presence and nature of the drugs. § 195.010[(34)]." **State v. Driskell**, 167 S.W.3d 267, 268 (Mo.App. 2005). Proof of these elements is usually "supplied by circumstantial evidence of the acts and conduct of the accused from which it can be fairly inferred he or she knew of the existence of the contraband." **Elmore**, 43 S.W.3d at 427.

---

[2] Defendant argues that from his testimony about Vaughn's access to his backpack at his apartment that day, at the TA Truck Stop and at the scene of the traffic stop, and Detective Garoutte's and Trooper Creasy's testimony that Vaughn was alone in the truck while they were questioning Defendant, "an inference of access and control of the methamphetamine by Tara Vaughn was raised." While that may be true, the jury's findings of guilt on both counts indicate that the jury rejected such an inference. Because this inference is contrary to the verdict, we must do likewise. **Stover**, 388 S.W.3d at 146 (appellate court disregards all inferences contrary to the verdict).

10

"Actual possession alone may provide a reasonable inference of such knowledge[.]" *State v. Gonzalez*, 235 S.W.3d 20, 26 (Mo.App. 2007). "A jury may infer that a person knows the nature of drugs in his actual possession." *State v. Jackson*, 806 S.W.2d 426, 428 (Mo.App. 1991). Here, in addition to actual possession, there were many other circumstances supporting that Defendant was aware of the presence and nature of the methamphetamine and paraphernalia.

As testified to by Vaughn, Defendant used methamphetamine intravenously the night before. The methamphetamine, syringe and needle found in Defendant's backpack align with this type of use. Drug paraphernalia "relate to a defendant's awareness of the presence and nature of controlled substances found at the same location." *Elmore*, 43 S.W.3d at 426. Evidence of contemporaneous possession of drug paraphernalia with possession of a controlled substance "is admissible to show the controlled substance was possessed with full knowledge of its illegal character." *Id.*

Furthermore, there was extensive evidence of Defendant's behavior that was indicative of current or recent drug use. The manager at the TA Truck Stop called law enforcement to report an individual who "was acting weird." He testified that Defendant had approached the counter to pay for fuel, but no fuel had been pumped. When he followed Defendant out to the pickup truck, he observed that Defendant "seemed . . . just off[]" and something was wrong with him. Both law enforcement officers testified that Defendant was acting strange, appeared disoriented, and "fidgeting constantly." Detective Garoutte described Defendant's driving as impaired and "careless and imprudent[.]" Vaughn testified that Defendant's driving that morning was "[s]cary" and that they "were going all over the place. . . . [and] weren't on the road." After Detective

Garoutte stopped Defendant, he called for backup after he observed Defendant's unusual behavior. When he asked Defendant for his driver's license, Defendant handed him his cell phone. Trooper Creasy testified that Defendant "seemed excessively nervous for a traffic stop[]" and was "kind of evasive with his answers to the questions" asked. Detective Garoutte testified that in his law enforcement career, he had experience dealing with hundreds of people using methamphetamine, and those people who "are into the high . . . are fidgeting around quite a bit." From this testimony about Defendant's unusual behavior that morning and at the time of the stop, a juror could reasonably infer beyond a reasonable doubt that Defendant had recently used methamphetamine or was under the influence of it at that time he actually possessed the methamphetamine and paraphernalia in his backpack following Detective Garoutte's stop of his truck. Such use supports that Defendant was aware of the nature of the methamphetamine and paraphernalia in his backpack.

Defendant, in his testimony before the jury, denied that he had any knowledge that the methamphetamine and syringe were in his backpack. He further denied that he had ever used methamphetamine and testified that he had not seen Vaughn use any. The fact that the jury returned guilty verdicts indicates that the jury did not believe Defendant's testimony but instead believed some, part, or all of Vaughn's testimony, which it was free to do. Her testimony provided additional evidence that Defendant knew of the presence and nature of the controlled substance and paraphernalia.

From the totality of all of the above circumstances, there was sufficient evidence for a reasonable juror to find beyond a reasonable doubt that Defendant possessed

12

methamphetamine and paraphernalia with knowledge of its presence and nature. Points I and II are denied.

### *Point III – Imposing Jail Sentence for Possession of Paraphernalia was Plain Error*

Defendant's third point has merit. In that point, Defendant contends that "[t]he trial court plainly erred in sentencing [Defendant] on Count II to a term of ninety days in the Lawrence County Jail because there was no authority to impose a jail sentence in that the jury only recommended a fine, and the jail sentence imposed is in excess of that recommendation." This claim was not raised in Defendant's motion for new trial.

Applicable to Defendant's status[3] here, section 577.036 provides, in part, that "[t]he jury shall assess and declare the punishment as authorized by statute." Section 577.036.3, RSMo Cum.Supp. 2003. Count II charged a class A misdemeanor, pursuant to section 195.233.2, RSMo 2000. Conviction on a class A misdemeanor can result in either a maximum sentence of one year served in a county jail or other penal institution, *see* section 558.011.1(5), or a fine not to exceed $1,000, *see* section 560.016.1(1), RSMo 2000. Here, the jury recommended "[n]o imprisonment but a fine in an amount to be determined by the court." Nevertheless, the trial court sentenced Defendant to serve a ninety-day term in the county jail on Count II and ordered that it be served concurrently with the ninety-day jail sentence imposed on Court I.

The State concedes that "it was error for the court to exceed the jury's validly recommended sentence." We agree. A judge "cannot exceed the punishment recommended by the jury." *State v. Emery*, 95 S.W.3d 98, 102 (Mo. banc 2003). "Being sentenced to a punishment greater than the maximum sentence for an offense constitutes

---

[3] Defendant did not waive the jury recommending a sentence, and he was not charged as a prior or persistent offender. *See* section 577.036, RSMo Cum.Supp. 2008.

plain error resulting in manifest injustice." *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010).

Both parties agree, as does this Court, that the decision in *State v. Oswald*, 14 S.W.3d 678 (Mo.App. 2000), controls and that the sentence imposed on Count II should be reversed and remanded to the trial court for resentencing in accordance with the jury's recommendation. Defendant's third point is granted.

## Decision

Defendant's conviction on Count I and the jury verdict of guilty on Count II are affirmed. The jail sentence imposed by the trial court on Count II is vacated, and the case is remanded for re-sentencing on Count II consistent with this opinion.


GARY W. LYNCH, J. - Opinion author

DON E. BURRELL, J. - concurs

MARY W. SHEFFIELD, J. - concurs

14