STATE of Missouri, Plaintiff–
Respondent,

v.

Francis Wayne ARNOLD,
Defendant–Appellant.

No. SD 31992.

Missouri Court of Appeals,
Southern District,
Division Two.

April 2, 2013.

Craig A. Johnston, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., Todd T. Smith, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, J.

Following a jury trial, Francis Arnold (Defendant) was convicted of the class B felony of trafficking in stolen identities and sentenced to 15 years imprisonment. *See* § 570.224.[1] On appeal, Defendant presents two points of error. In Point I, Defendant contends the trial court erred by overruling Defendant's motion for judgment of acquittal at the close of the evidence. De-

---

1. All references to statutes are to RSMo Cum. Supp. (2010) unless otherwise indicated. All references to rules are to Missouri Court Rules (2012).

fendant argues that the evidence was insufficient to support his conviction. In Point II, Defendant contends the trial court committed plain error by submitting a verdict-directing instruction which lacked a definition required by MAI–CR 3d 324.41.1. Defendant argues that: (1) the required definition for the crime of "identity theft" was omitted from the verdict director; and (2) at trial, Defendant seriously disputed the issue of whether he knowingly possessed the means of identification. We deny Point I because the State made a submissible case. We grant Point II, however, because Defendant has met his burden of showing that a plain error occurred and that a manifest injustice would result if the error is left uncorrected. Therefore, we reverse the judgment and remand the case for a new trial.

This Court views the facts in the light most favorable to the verdict. *State v. Cooper*, 215 S.W.3d 123, 124 (Mo. banc 2007). So viewed, the following evidence was presented at trial.

On April 28, 2011, Webster County Deputy Sheriff Paul Bridgewater (Deputy Bridgewater) pulled over onto a shoulder of I–44 to find a parked, two-door car. Defendant was standing beside the open passenger door, facing the car and urinating on the side of the road. As soon as the deputy approached, another person sitting inside the vehicle quickly exited and ran away.[2] Defendant, who appeared to be intoxicated, was placed in the patrol car. The deputy looked into the empty car through the open passenger door. The passenger seat was upright. Deputy Bridgewater noticed several "IDs" laying on the passenger seat and the passenger floorboard. When Deputy Bridgewater asked Defendant about those items, Defendant "denied everything." He did admit, however, that it was his vehicle and that

he had been a passenger in the car. Defendant was arrested for trafficking in stolen identities in violation of § 570.224.

During Deputy Bridgewater's trial testimony, several items found in the passenger seat and floorboard of the car were admitted in evidence. They consisted of the following: two checkbooks, a driver's license, a credit card, and two social security cards—all belonging to separate individuals. Defense counsel stipulated that all six items were means of identification and that said items were in Defendant's vehicle without the owners' permission or lawful consent. Throughout the proceedings, however, it was defense counsel's position that Defendant did not "knowingly possess" these means of identification. At the close of the evidence, the trial court denied Defendant's motion for judgment of acquittal.

During the instruction conference, defense counsel did not object to any of the jury instructions. The verdict-directing instruction stated:

INSTRUCTION NO. 7

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 28, 2011, in the County of Webster, State of Missouri, the defendant possessed a checkbook owned by Justine Brown, a checkbook owned by Britney Steele, a Missouri driver's license identifying Amber Steele, a social security card identifying Robert Ward, a social security card identifying Cynthia Ward and a Visa credit card identifying Robert Ward, and

Second, that such items were means of identification, and

2. This person, whose name is not included in the record, was eventually apprehended.

Third, that defendant intended to sell or transfer such information for the purpose of committing **identity theft,**

then you will find the defendant guilty of trafficking in stolen identities.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "means of identification" includes, but is not limited to, the following: Social Security numbers; drivers license numbers; checking account numbers; savings account numbers; credit card numbers; debit card numbers; personal identification (PIN) code; electronic identification numbers; digital signatures; any other numbers or information that can be used to access a person's financial resources; biometric data; fingerprints; passwords; parent's legal surname prior to marriage; passports; or birth certificates.

As used in this instruction, the term "possessed" means having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if such person has the object on his or her person or within easy reach and convenient control. A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint.

(Bold emphasis added.) The instruction did not contain the required definition that explains how a person commits the crime of identity theft.

During deliberations, the jurors sent a note to the trial court containing the following question: "May we have a copy of the Revised Missouri Statutes defining Missouri law on trafficking and stolen identities?" The court's response was to "[p]lease be guided by the instructions and verdict forms the Court has already given you." The jury found Defendant guilty.

Thereafter, Defendant filed a post-trial motion for judgment of acquittal and an alternative motion for new trial. The latter motion contained no allegation of instructional error. The trial court denied both motions and sentenced Defendant to 15 years imprisonment. This appeal followed.

## Point I

In Defendant's first point, he contends the trial court erred by overruling Defendant's motion for judgment of acquittal at the close of the evidence. "In a jury-tried case, an appellate court reviews a trial court's ruling on a motion for judgment of acquittal to determine whether the State made a submissible case." *State v. Wood*, 301 S.W.3d 578, 580 (Mo.App.2010). This requirement is satisfied if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Liberty*, 370 S.W.3d 537, 542–43 (Mo. banc 2012); *State v. Bateman*, 318 S.W.3d 681, 686–87 (Mo. banc 2010). When reviewing a challenge to the sufficiency of the evidence, an appellate court does not weigh the evidence. *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). The credibility and weight of testimony are for the jury to determine. *Id.* "The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* On appellate

review, we accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence. *Liberty,* 370 S.W.3d at 543. All contrary evidence and inferences are disregarded. *Id.* In addition, "[t]he State may rely upon direct and circumstantial evidence to meet its burden of proof." *State v. Burks,* 373 S.W.3d 1, 3 (Mo.App. 2012). In our review, "circumstantial evidence is afforded the same weight as direct evidence." *State v. Stewart,* 265 S.W.3d 309, 314 (Mo.App.2008).

The crime of trafficking in stolen identities is committed when a defendant "manufactures, sells, transfers, purchases, or possesses, with intent to sell or transfer means of identification as defined in subsection 2 of section 570.223, for the purpose of committing identity theft." § 570.224.1. "Identity theft" is a separate crime and is defined as follows: "A person commits the crime of identity theft if he or she knowingly and with the intent to deceive or defraud obtains, possesses, transfers, uses, or attempts to obtain, transfer or use, one or more means of identification not lawfully issued for his or her use." § 570.223.1; *see State v. Young,* 367 S.W.3d 641, 645 (Mo.App.2012).

In the case at bar, the State's information alleged that Defendant violated § 570.224 because he: (1) possessed; (2) means of identification belonging to six different people; (3) with the intent to sell or transfer; (4) for the purpose of committing identity theft. With respect to the first element, "possessed" includes "actual or constructive possession of an object with knowledge of its presence." § 556.061(22). "A person has actual possession if such person has the object on his or her person or within easy reach and convenient control." *Id.* With respect to the second element, the term "means of identification" includes checking account numbers, driver's license numbers, social security numbers, and "any other numbers or information that can be used to access a person's financial resources...." § 570.223.2(10). With respect to the third element, "[p]ossession of five or more means of identification of the same person or **possession of means of identification of five or more separate persons** shall be evidence that the identities are possessed with intent to manufacture, sell, or transfer means of identification for the purpose of committing identity theft." § 570.224.2 (bold emphasis added). With respect to the fourth element, the crime of identity theft is committed by: (1) knowingly and with the intent to deceive or defraud; (2) possessing; (3) one or more means of identification; (4) not lawfully issued for the defendant's use. A person "acts knowingly ... [w]ith respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist...." § 562.016.3(1) RSMo (2000). At trial, defense counsel stipulated that the two checkbooks, one driver's license, two social security cards and one credit card found in Defendant's vehicle were "means of identification" and that said items were in the vehicle without the owners' permission or lawful consent.

Defendant first contends the evidence is insufficient to show that he knowingly possessed the stolen means of identification by being aware of their presence or nature. Defendant argues that no rational fact-finder could connect Defendant with the means of identification inside the car because he was standing outside the car when Deputy Bridgewater arrived.[3] We disagree.

---

3. Defendant cites several cases to support his argument that he did not have knowledge or control over the identification materials found in his car. The cases he cites, however, are

When Deputy Bridgewater arrived, he activated his emergency lights. The driver of the two-door vehicle quickly exited and ran away. Defendant was standing by the open passenger door. He was facing the car, urinating on the side of the road. He admitted that he owned the car and that he was the passenger. The passenger seat was upright. When Deputy Bridgewater looked inside the open passenger door, he saw several means of identification lying in plain sight on the passenger seat and passenger floorboard. When Defendant was asked about these items, he "denied everything." [4]

■ Based upon our review of the evidence and inferences favorable to the verdict, a reasonable juror could infer that: (1) Defendant had been inside the car until it was stopped so he could urinate; (2) he had been sitting in the front passenger seat; (3) two checkbooks, a driver's license, two social security cards and a credit card—all belonging to six different individuals—were in plain view in the passenger seat and passenger floorboard; (4) while inside the car, those items were within Defendant's easy reach and convenient control; and (5) Defendant's denial of any knowledge of items within plain

view in his seat and floorboard demonstrated consciousness of guilt. Therefore, the evidence was sufficient for the jury to find beyond a reasonable doubt that Defendant actually possessed the means of identification in the vehicle. *See* § 556.061(22); *State v. Morgan*, 366 S.W.3d 565, 575–76 (Mo.App.2012) (after removing one of the passengers from the back seat, the deputy observed a fire extinguisher, often used to steal anhydrous ammonia, "in plain view on top of a speaker box immediately behind the defendant's driver's seat. This is sufficient evidence from which a reasonable juror could conclude that the fire extinguisher was within defendant's easy reach and convenient control, and thus that defendant had actual possession of that fire extinguisher"); *State v. Wood*, 301 S.W.3d 578, 584 (Mo. App.2010) (jurors could reasonably infer control as defendant had been driving the pickup in which drug paraphernalia was found in the driver's door pocket); *State v. Simmons*, 716 S.W.2d 427, 430 (Mo.App. 1986) ("[a]lthough appellant was apprehended some distance from the van wherein the concealed weapon was found, that does not preclude a finding that while appellant was in the van the weapon was in such close proximity to him as to be within

factually distinguishable because, *inter alia,* the contraband at issue in those cases was concealed, rather than in plain view like the case at bar. *See, e.g., State v. Ingram,* 249 S.W.3d 892, 896 (Mo.App.2008) (small rock of cocaine in driver's seat not in plain sight when defendant driver was in the car); *State v. Gonzalez,* 235 S.W.3d 20, 25 (Mo.App.2007) (marijuana found under carpet in the back seat); *State v. Driskell,* 167 S.W.3d 267, 269 (Mo.App.2005) (drugs concealed inside a cigarette package, a plastic pouch, and the console); *State v. Bristol,* 98 S.W.3d 107, 110 (Mo.App.2003) (a plastic baggie containing cocaine wedged between the center console and the driver's seat, not in plain view); *State v. Johnson,* 81 S.W.3d 212, 214 (Mo.App. 2002) (marijuana hidden in the "factory

voids" of the vehicle); *State v. Yarber,* 5 S.W.3d 592, 593 (Mo.App.1999) (cocaine-based substance concealed behind the bolt that secured the passenger seat); *State v. Mercado,* 887 S.W.2d 688, 691 (Mo.App.1994) (marijuana concealed behind wall panels of van); *State v. Allen,* 744 S.W.2d 865, 867 (Mo.App.1988) (marijuana found in the trunk); *State v. Bowyer,* 693 S.W.2d 845, 846 (Mo.App.1985) (marijuana found in console located between the two front seats).

4. It is well settled that false exculpatory statements evidence a consciousness of guilt. *See State v. Huffman,* 374 S.W.3d 382, 388 (Mo. App.2012).

his easy reach and convenient control").[5] In sum, the evidence was sufficient to prove that Defendant actually possessed the means of identification found in the passenger seat and floorboard of his car. Thus, the State met its burden of proof with respect to the first two elements of the crime.

Defendant next contends the evidence was insufficient to prove the third and fourth elements of the crime: that he intended to sell or transfer the means of identification for the purpose of committing identity theft. We disagree.

As noted above, the State presented evidence from which a reasonable juror could infer that Defendant actually possessed means of identification belonging to six different persons. The possession of means of identification of five or more separate persons "shall be evidence that the identities are possessed with intent to manufacture, sell, or transfer means of identification for the purpose of committing identity theft." § 570.224.2.[6] Defendant acknowledges the language of the statute, but he argues the presumption it creates is not conclusive on the issue of intent. That argument is misdirected.

 We agree with Defendant that the statutory presumption contained in § 570.224.2 is permissive: that is, the factfinder may, but is not required to, infer the requisite intent based upon proof that the defendant possessed the minimum number and type of means of identification. The parties stipulated that six means of identification were found in Defendant's car, and we have determined that the evidence was sufficient for a reasonable juror to infer that Defendant actually possessed those items. Accordingly, the statutory presumption in § 570.224.2 was triggered, and the State was entitled to rely upon that presumption to meet its burden of proof. Because there was sufficient evidence to prove that Defendant actually possessed means of identification belonging to six different persons, the jury could infer that Defendant did so with the intent to sell or transfer those items for the purpose of committing identity theft. The statutory presumption in § 570.224.2 was sufficient to create a jury issue as to elements three and four of the crime of trafficking in stolen identities. *See, e.g., State v. Bass,* 81 S.W.3d 595, 616 (Mo.App. 2002); *State v. Bell,* 798 S.W.2d 481, 487 (Mo.App.1990); *State v. Aldrich,* 724 S.W.2d 688, 692 (Mo.App.1987).

Viewing the evidence and all reasonable inferences therefrom favorably to the State, as we must, the jury was presented

---

**5.** Defendant also argues the evidence was insufficient to prove that he possessed the stolen identities because the means of identification were found after the driver fled, and he could have left those items in the car. Defendant's access to an area where the means of identification were found, however, "is an incriminating fact which is not destroyed by the fact others also had access." *State v. Shinn,* 921 S.W.2d 70, 73 (Mo.App.1996). Because six different means of identification were sitting in plain view in the passenger seat and passenger floorboard, a juror reasonably could infer that Defendant saw those items and understood what they were. *See* § 562.016.3(1) RSMo (2000); *State v. Brown,* 660 S.W.2d 694, 699 (Mo. banc 1983) (direct proof of the required mental state is seldom available and such intent is usually inferred from circumstantial evidence); *see, e.g., State v. Watson,* 290 S.W.3d 103, 109 (Mo.App.2009) (presence of marijuana in defendant's lap supports inference that defendant, as the driver, knew of methamphetamine in the driver's floorboard).

**6.** For the purpose of applying the presumption, this subsection excludes: (1) possession of the defendant's own identification documents; and (2) "possession of the identification documents of a person who has consented to the person at issue possessing his or her identification documents." § 570.224.2.

with sufficient evidence to find beyond a reasonable doubt all of the elements of the crime of trafficking in stolen identities. *See Liberty*, 370 S.W.3d at 542–43. Accordingly, the trial court did not err in denying Defendant's motion for judgment of acquittal. Point I is denied.

### Point II

■■■ In order to find Defendant guilty, paragraph Third of Instruction No. 7 required the jury to find "that defendant intended to sell or transfer such information for the purpose of committing identity theft. . . ." Defendant's second point posits that the trial court erred by submitting Instruction No. 7 without the required definition of the crime of "identity theft." Because this objection was not made at trial and renewed in Defendant's motion for new trial, we can review only for plain error. *See* Rule 28.03; *State v. Stover*, 388 S.W.3d 138, 153–54 (Mo. banc 2012).

> For instructional error to rise to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice. It must be apparent to the appellate court that the instructional error affected the jury's verdict.

*State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007) (citations omitted). An appellate court will be more inclined to reverse in cases where the erroneous instruction did not merely permit a wrong word or some other ambiguity to exist, but instead excused the State from having to meet its burden of proof on a contested element of the crime. *See State v. Doolittle*, 896 S.W.2d 27, 30 (Mo. banc 1995). When a verdict-directing instruction omits an essential element of the offense, plain error

exists unless the evidence establishes the existence of the omitted element beyond serious dispute. *See State v. Roe*, 6 S.W.3d 411, 415 (Mo.App.1999); *State v. Brokus*, 858 S.W.2d 298, 303 (Mo.App. 1993).

■■■ The pattern instruction for submitting the crime of trafficking in stolen identities by possession is found in MAI–CR 3d 324.41.1. Paragraph Third of the pattern instruction uses the phrase "identity theft." *Id.* The pattern instruction includes the following definition for that phrase: "A person commits the crime of identity theft if (he)(she) knowingly and with the intent to defraud obtains, possesses, transfers, uses one or more means of identification not lawfully issued for (his)(her) use." *Id.*[7] This is the statutory definition of identity theft, which is taken directly from § 570.223.1. *See* Note on Use 6(a), MAI–CR 3d 324.41. As is evident from the definition, the crime of identity theft has different elements, including different knowledge and intent requirements, than the crime of trafficking in stolen identities. Instruction No. 7 omitted the required definition of the crime of identity theft. That omission is presumed to be prejudicial error. *See State v. Spry*, 252 S.W.3d 261, 266 (Mo.App.2008). Because we are reviewing here only for plain error, a greater showing than mere prejudice is required. *See State v. Cooper*, 336 S.W.3d 212, 216 (Mo.App.2011). We must determine that the instructional error so misdirected or so failed to instruct the jury that it actually affected the jury's verdict and caused a manifest injustice or miscarriage of justice. *Id.*

Defendant argues that omitting the definition of the crime of identity theft from Instruction No. 7 resulted in a manifest

---

7. The words "knowingly" and "purpose" also may be defined by the court on its own motion and must be defined upon written request in proper form by the state or by the defendant. Note on Use 6(b), MAI–CR 3d 324.41.

injustice because: (1) the required definition would have explained to the jury that Defendant had to knowingly possess the means of identification found in his car; (2) that issue was seriously disputed at trial; and (3) given the jury's question to the court, the omission of the required definition of the crime likely affected the jury's verdict. We agree.

A verdict-directing instruction must contain each element of the offense charged and require the jury to find every fact necessary to constitute essential elements of the offense charged. *Stover*, 388 S.W.3d at 153–54. A defendant's due process rights are violated when an instruction relieves the State of its burden to prove the existence of every essential element of the crime and does not require the jury to deliberate on and determine a contested element of the crime. *Stover*, 388. S.W.3d at 154; *State v. Cooper*, 215 S.W.3d 123, 125–26 (Mo. banc 2007). The absence of a required definition from a verdict-directing instruction can effectively omit an essential element of the offense. *See, e.g., Doolittle*, 896 S.W.2d at 29–30 (the instruction failed to include the required definition of "dangerous instrument" or require the jury to find that defendant used or threatened the use of such instrument in the commission of the offense); *State v. Jones*, 865 S.W.2d 658, 661–62 (Mo. banc 1993) (the instruction failed to include the required definition of "possession"); *State v. Farris*, 125 S.W.3d 382, 392–93 (Mo. App.2004) (the instruction failed to include the required definition of "possession"). When a verdict-directing instruction effectively omits an essential element of the offense, that instruction is plainly erroneous if the evidence in the case fails to establish the existence of the omitted element beyond serious dispute. *Farris*, 125 S.W.3d at 394; *State v. Harney*, 51 S.W.3d 519, 533–34 (Mo.App.2001). "On the other hand, if the evidence establishing the omitted element was not in dispute, the jury's verdict would not have been affected and no plain error relief need be given." *Cooper*, 215 S.W.3d at 126; *see, e.g., State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994); *State v. Harrell*, 342 S.W.3d 908, 922 (Mo.App.2011).

The State contends Defendant did not seriously dispute that he possessed the means of identification because defense counsel stipulated that the "means of identification were in [Defendant's vehicle] without the owner's permission or with their lawful consent." According to the State, this stipulation proves both "possession and intent." That argument is not supported by the record. Based upon our review of the transcript, Defendant never stipulated that he "knowingly" possessed the aforementioned means of identification. To the contrary, defense counsel consistently argued that: (1) Defendant did not know the means of identification were in the car; and (2) said items belonged to the driver, who ran away when Deputy Bridgewater arrived. Thus, the issue of whether Defendant knowingly possessed the means of identification found in his car was seriously disputed at trial. During deliberations, the jurors asked for copies of the Missouri statutes defining trafficking and stolen identities. If Instruction No. 7 had included the required definition of identity theft, the jurors would have understood exactly what elements, including the required culpable mental state, they were required to find in order to decide that Defendant intended to commit that crime. In the absence of such a definition, the jurors were given a roving commission to sift through the facts and convict Defendant based upon the jurors' own conceptions (or misconceptions) of how the crime of identity theft is committed. *See State v. Scott*, 278 S.W.3d 208, 214 (Mo.App.2009) (a jury instruction cre-

ates a roving commission when it posits an abstract legal question that the permits the jurors to roam freely through the evidence and choose any facts that suit their fancy or perception of logic to impose liability).

After reviewing the record, we conclude that Instruction No. 7 so misdirected or failed to instruct the jury as to cause a manifest injustice or miscarriage of justice. The issue of whether Defendant knowingly possessed the means of identification for the purpose of committing identity theft was seriously disputed. It is apparent that the erroneous absence of the required definition from Instruction No. 7 affected the jury's verdict. Accordingly, Defendant has met his burden of showing that a plain error occurred and that a manifest injustice would result if the error is left uncorrected. *See Stover,* 388 S.W.3d at 154; *Cooper,* 215 S.W.3d at 125–26. Point II is granted.

The judgment is reversed, and the cause is remanded.

DANIEL E. SCOTT, P.J., and MARY W. SHEFFIELD, J., concur.