STATE of Missouri, Respondent,

v.

Ralph Baby JONES, Appellant.

No. ED 103677

Missouri Court of Appeals, Eastern District, DIVISION FOUR.

FILED: March 14, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

Application for Transfer Denied June 27, 2017

Maleaner Harvey, 1010 Market St., Suite 1100, St. Louis, MO 63101, for appellant.

Joshua D. Hawley, Richard A. Starnes, P.O. Box 899, Jefferson City, MO 65102, for respondent.

KURT S. ODENWALD, Judge

## Introduction

Ralph Jones ("Jones") appeals from the judgment of the trial court entered after a jury trial. Jones was charged with attempting to cause physical injury with a dangerous instrument (his vehicle) and then leaving the scene of the resulting accident. The jury convicted Jones on one felony count of second-degree assault and one felony count leaving the scene of a motor-vehicle accident. On appeal, Jones challenges the sufficiency of the evidence for both counts. Jones also argues that the trial court plainly erred in submitting Instruction No. 5, the verdict director for second-degree assault, without defining the term "dangerous instrument."

Because the evidence was sufficient to support both convictions, we deny Jones's first two points. Further, because Jones did not seriously dispute that his vehicle constituted a "dangerous instrument," failing to define the term in the verdict director for second-degree assault did not warrant reversal under plain-error review. Accordingly, we affirm.

## Factual and Procedural History

Jones skipped bail. In February 2014, he was at large. Randall Davis ("Davis"), a licensed bail bondsman, sought a $5,000 bounty for Jones's capture. Davis had received Jones's information—including a photo—from another bondsman. Davis found a woman who knew Jones and, for $100, the woman agreed to text Davis if she saw Jones.

The woman texted Davis, who then drove to the woman's residence in a Chevy Tahoe with two associates. While looking for a parking spot, Davis testified that a grey SUV "zoomed" directly towards him, swerved into his lane, and struck the front-right of his Tahoe. The impact pushed the Tahoe backwards into "a pole or something," tearing the back bumper. The repairs totaled $3,992. Davis identified Jones as the driver of the grey SUV.

Jones did not stop after striking Davis. Instead, Jones steered his SUV onto the sidewalk, went around Davis's Tahoe, and drove away. Davis followed Jones for about 20 minutes, on and off the interstate, down side streets, back on the highway, then through more city streets. At one point, Jones stopped and a woman rolled out of the SUV. The woman stood up and pointed at Jones. Jones, however, was off again. Davis followed. Later in the chase, Jones attempted to turn left but he hit another vehicle in the intersection. Jones continued driving until he hit a tree. Jones then exited the SUV and started running. Davis yelled, "Stop, you're under arrest," and pursued Jones on foot. Two officers saw Jones hit the tree and joined in the foot pursuit. Davis, his associates, and the officers eventually apprehended Jones in an alley. A grand jury indicted Jones on two felony counts: Count I for second-degree assault and Count II for leaving the scene of a motor-vehicle accident. Both

counts related to Jones's collision with Davis.

The case proceeded to a jury trial. The State presented its case largely as outlined above. Jones testified as the only defense witness. Jones maintained that he tried to avoid the collision with Davis, but that Davis was speeding, driving recklessly, and swerving into the other lane. Jones claimed that he left the scene because he did not know who was driving the Tahoe and he was afraid. Once Jones crashed into the tree, he immediately got out of his car and ran towards the police officers, telling them that someone was chasing him and that he feared for his life.

Instruction No. 5 was the verdict director for the second-degree assault charge. The jury instruction was submitted by the trial court without any objection from the parties. To convict Jones of second-degree assault, the instruction required the jury to find that Jones "attempted to cause physical injury to Randall Davis by means of a dangerous instrument by striking Randall Davis's vehicle with his vehicle." Although the Note on Use 7 for MAI-CR 3d required the term "dangerous instrument" to be defined for the jury, Instruction No. 5 lacked that definition.

The jury convicted Jones on both counts. The trial court sentenced Jones as a persistent felony offender to prison for 15 years on Count I and five years on Count II. Jones appeals.

## Points on Appeal

Jones raises three points on appeal, the first two points challenging the sufficiency of the evidence, and the last point alleging instructional error. First, Jones posits that the evidence was insufficient to support a conviction for second-degree assault because no evidence was adduced proving that he intended to cause physical injury when he drove his SUV into Davis's Tahoe. Second, Jones claims there was insufficient evidence to support the charge of leaving the scene because the evidence presented at trial suggested that he left the scene of the collision because of his reasonable "apprehension of danger." Finally, Jones argues that the trial court plainly erred by giving Instruction No. 5 the verdict director for the second-degree assault charge without defining the term "dangerous instrument."

## Discussion

### I.  Sufficiency of the Evidence

Because Jones's first two points focus on the sufficiency of the State's evidence, we address these points together.

#### A.  Standard of Review

■ To determine whether the State presented sufficient evidence to sustain a conviction, we consider each element of the crime. State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993). We view the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence. Id. Conversely, we disregard all contrary inferences unless they are "such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." Id. Viewing the evidence in this light, the issue becomes "whether a reasonable juror could find each of the elements beyond a reasonable doubt." Id.

#### B.  Point One—Assault in the Second Degree

■ A person commits assault in the second degree, as charged here, if he or she attempts to cause physical injury to another person by means of a dangerous instrument. Section 565.060.1(2) (Cum.

Supp. 2013).[1] Importantly, Jones does not dispute the sufficiency of the evidence for the "dangerous instrument" element. A motor vehicle qualifies as a dangerous instrument when it is used under circumstances where it is readily capable of causing death or serious physical injury. State v. Williams, 126 S.W.3d 377, 384 (Mo. banc 2004). A juror reasonably could have concluded that an SUV "zooming" into oncoming traffic was a dangerous instrument. Jones's defense to the assault charge was premised solely on his argument that the evidence was insufficient to prove the first element of the assault charge, in that he attempted to cause physical injury to Davis while driving the SUV.

◼ Section 564.011 governs all attempt crimes, including attempt-based assault in Section 565.060.1(2). State v. Ransburg, 504 S.W.3d 721, 723 (Mo. banc 2016) (quoting Williams, 126 S.W.3d at 381). Attempt has only two elements: "(1) defendant has the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense." Id. (quoting State v. Withrow, 8 S.W.3d 75, 78 (Mo. banc 1999)). A person acts purposely "with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result." Section 562.016.2.

◼ Accordingly, to prevail on the assault charge, the State needed to present sufficient evidence that Jones (1) intended to cause physical injury to Davis and (2) performed an act that was a substantial step toward causing that physical injury. Intent is rarely susceptible to proof by direct evidence; rather, it is usually inferred circumstantially. State v. Lammers, 479 S.W.3d 624, 633 (Mo. banc 2016). A jury may determine a defendant's mental state from the defendant's conduct before

the act, from the act itself, and from the defendant's subsequent conduct. State v. Hineman, 14 S.W.3d 924, 927–28 (Mo. banc 1999).

Deliberately driving a vehicle into another person's vehicle while traveling at a high rate of speed reasonably supports an inference that the driver acted with the purpose of causing physical injury. State v. Ise, 460 S.W.3d 448, 456 (Mo. App. W.D. 2015). In Ise, the defendant and the victim "got into a little road rage" with each other on the highway. Id. at 453. The defendant's car cut across traffic and hit the victim's car in the rear quarter panel. Id. at 453–54. The impact caused the victim to spin off the highway and into a concrete median. Id. at 454. The Western District held that a reasonable juror could have concluded that the defendant attempted to cause physical injury when he purposefully propelled his vehicle (a dangerous instrument) into the victim's car while traveling at a high speed on an interstate highway. Id. at 456.

The facts of Ise are similar to the facts here. Davis testified that Jones, who was traveling in the opposite direction of Davis's Tahoe, "zoomed" toward Davis. Davis recounted that Jones's SUV swerved into his path and struck the Tahoe's right-front side in a head-on collision. The intense force of the collision pushed back Davis's Tahoe into "a pole or something," which crushed the back bumper. While admittedly the collision on a city street here may have occurred at a slower speed than the interstate-highway collision in Ise—thus, less likely to cause injury—we find this factual distinction insignificant in the context of this case. Jones's SUV was "zooming" directly at Davis with sufficient speed to force the Tahoe—a large SUV—backwards into a pole. Such a head-on

1. All statutory references are to RSMo (2000),     unless otherwise noted.

collision, a reasonable juror could conclude, could easily cause physical injury. See Section 556.061(20) (Cum. Supp. 2013) ("Physical injury" means "physical pain, illness, or any impairment of physical condition."). The fact that Jones had skipped bail and ran into a bail bondsman who sought his capture, along with the subsequent flight and refusal to stop, further supports a reasonable inference that Jones acted purposefully, rather than negligently or accidentally.

Viewing the evidence in the light most favorable to the verdict, Jones purposefully drove or "zoomed" his SUV into the wrong lane of traffic, causing a head-on collision with Davis's oncoming Tahoe. As in Ise, such conduct by Jones allowed a juror to reasonably infer that Jones acted with the purpose to cause physical injury to Davis. Given the inference of intent to cause physical injury, the act of swerving into the opposite lane of traffic and striking Davis's Tahoe is reasonably viewed as a substantial step towards causing that physical injury. Thus, sufficient evidence supported the jury's verdict for second-degree assault.

■ Jones argues on appeal that the only reasonable inferences from the evidence were that he struck the vehicle because he did not want to be taken back into custody or that he feared for his life. We disagree. While each of Jones's explanations for his conduct might be allowable inferences from the evidence, they are not the only inferences that may be drawn. Under our standard of review, the jury was not required to draw those inferences: "Evidence is sufficient to support guilt if any reasonable inference supports guilt, even if other 'equally valid' inferences do not." State v. Putney, 473 S.W.3d 210, 219 (Mo. App. E.D. 2015).

The evidence, when viewed most favorably to the verdict, allowed a reasonable inference that Jones attempted to cause Davis physical injury with a dangerous instrument beyond a reasonable doubt. Thus, sufficient evidence supported Jones's conviction for assault in the second degree. Point One is denied.

## C. Point Two—Leaving the Scene

■ Under Section 577.060.1, a driver of a motor vehicle commits the crime of leaving the scene of a motor-vehicle accident when:

knowing that an injury has been caused to a person or damage has been caused to property, due to his culpability or to accident, he leaves the place of the injury, damage or accident without stopping and giving his [identification information] to the injured party or to a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.

■ The crime of leaving the scene is complete when the defendant, knowing about an injury or damage to property, continues on without giving the required information. State v. Hogsett, 450 S.W.3d 420, 423 (Mo. App. S.D. 2014). It is not relevant whether a defendant was at fault for the damage or the injury. State v. Urhahn, 621 S.W.2d 928, 933 (Mo. App. E.D. 1981). Additionally, as charged here, leaving the scene of an accident is a class D felony if the accident resulted in property damage exceeding $1,000. Section 577.060.3(2).

Here, the evidence established that Jones and Davis had a head-on collision. Jones admitted that he knew the collision happened. After the collision, Jones left the scene without stopping to give the identification information as required by Section 577.060.1. Further, Davis testified that the cost of repairs to his Tahoe was $3,992.42. Because the evidence established that Jones knowingly left the scene

of an accident—in which property damage exceeded $1,000—without providing the required information to Davis, the evidence was sufficient to support his class D felony conviction for leaving the scene of a motor-vehicle accident.

Jones argues that the evidence was insufficient because he left the scene in reasonable "apprehension of danger." See State v. Morrison, 174 S.W.3d 646, 650 (Mo. App. W.D. 2005); Urhahn, 621 S.W.2d at 934. The Morrison Court recognized that failure to comply with Section 577.060.1 "may be legally excused upon a showing that the driver left the accident scene based on a reasonable 'apprehension of danger.'" Morrison, 174 S.W.3d at 650 (quoting Urhahn, 621 S.W.2d at 934). Citing Oregon caselaw, this Court in Urhahn recognized that a driver's reasonable apprehension of danger might constitute a justification defense for leaving the scene of an accident. 621 S.W.2d at 934. Because this reasonable-apprehension defense is not defined in Section 577.060 and Jones does not point us to a specific statute on point, we look to the general statute outlining justification defenses, Section 563.026. With a few exceptions not relevant here, Section 563.026.1 allows a justification defense as an "emergency measure" to avoid injury when the "desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged."

Critically, a justification defense is an affirmative defense. Section 563.026.3. An affirmative defense, as opposed to an ordinary defense, is an independent bar to liability in which the defendant carries the burden of persuasion; an affirmative defense does not negate any of the essential elements that the State must prove in order to convict a defendant.

State v. Faruqi, 344 S.W.3d 193, 201 n.3 (Mo. banc 2011); see also Section 556.056(2) (for an affirmative defense, "the defendant has the burden of persuasion that the defense is more probably true than not."). Whether the State carried its burden to produce sufficient evidence for each essential element of the crime (our inquiry here) is an issue distinct and separate from whether Jones carried his burden to persuade the jury that he was justified in leaving the scene (Jones's appellate argument).

Because the State presented sufficient evidence supporting the essential elements of the crime of leaving the scene of a motor-vehicle accident, Point Two is denied.

## II. Point Three—Plain Error

Jones asserts that the trial court plainly erred by failing to define the term "dangerous instrument" in the verdict director for second-degree assault. The definition, as the State concedes, was required by MAI-CR 3d 319.12, Note on Use 7.

### A. Standard of Review

Because Jones did not object to Instruction No. 5 at trial, this Court is limited to plain-error review. State v. Wurtzberger, 40 S.W.3d 893, 898 (Mo. banc 2001); Rule 30.20.[2] We have the discretion to consider plain errors affecting substantial rights if those errors result in manifest injustice or a miscarriage of justice. Rule 30.20. Instructional error seldom rises to plain error. State v. Thomas, 75 S.W.3d 788, 791 (Mo. App. E.D. 2002). But instructional error does rise to plain error "when it is clear the trial court so misdirected or failed to instruct the jury so that it is apparent the error affected the verdict." State v. Beeler, 12 S.W.3d 294, 300 (Mo. banc 2000); see also State v. Miller,

2. All rule references are to Mo. R. Crim. P. (2016).

372 S.W.3d 455, 470 (Mo. banc 2012). The burden is on the defendant to demonstrate plain error. See State v. Guyton, 158 S.W.3d 252, 254 (Mo. App. E.D. 2005) "The determination of manifest injustice must be based on a consideration of the facts and circumstances of each case." State v. Bartlik, 363 S.W.3d 388, 391 (Mo. App. E.D. 2012)."

### B. Plain-Error Review

■ As detailed in our sufficiency analysis, the jury convicted Jones of second-degree assault for attempting to cause physical injury to Davis by means of a "dangerous instrument." See Section 565.060.1(2). The trial court submitted Instruction No. 5, the verdict director for second-degree assault, which was based on MAI-CR 3d 319.12. The relevant portion of Instruction No. 5 allowed the jury to find Jones guilty of second-degree assault if Jones "attempted to cause physical injury to Randall Davis by means of a dangerous instrument by striking Randall Davis' vehicle with his vehicle. . . ." instruction No. 5, however, did not define the term "dangerous instrument" [3] as required by MAI-CR 3d 319.12, Note on Use 7. As the State concedes, Instruction No. 5 was erroneous. State v. Drisdel, 417 S.W.3d 773, 782 (Mo. App. E.D. 2013) (giving an instruction that violates the Notes on Use constitutes error). But the State argues that the erroneous instruction did not result in manifest injustice. We agree.

■ In determining whether the jury instruction misdirected the jury, an appellate court will be more inclined to reverse judgments where the erroneous instruction "did not merely allow a wrong word or some other ambiguity to exist, [but] excused the State from its burden of proof on [a] contested element of the crime." State v. Roe, 6 S.W.3d 411, 415 (Mo. App. E.D. 1999) (quoting State v. Doolittle, 896 S.W.2d 27, 30 (Mo. banc 1995)). A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute the essential elements of the offense. Doolittle, 896 S.W.2d at 30.

■ We fully recognize that the absence of a required definition from a verdict-directing instruction has the potential of effectively omitting an essential element of the offense. State v. Arnold, 397 S.W.3d 521, 529 (Mo. App. S.D. 2013). A verdict-directing instruction that effectively omits an essential element rises to plain error if the evidence establishing the omitted element was seriously disputed. State v. Cooper, 215 S.W.3d 123, 126 (Mo. banc 2007). Conversely, if the evidence establishing the omitted element was not seriously disputed, there is no effect on the jury's verdict and plain-error relief is unnecessary. Id.

The record amply supports our conclusion that Jones never seriously disputed at trial that his SUV constituted a dangerous instrument. Jones reasoned that he committed no assault whatsoever, because he did not cause the collision. Similarly, defense counsel never argued in closing argument that Jones's SUV was not a dangerous instrument. The defense theory asserted that Jones committed no crime because he did not cause the accident and his purpose for leaving the scene was merely to extract himself from a precarious or dangerous situation. Finally, the prosecutor at no time referred to the "dangerous instrument" element in either

---

**3.** MAI-CR 3d 319.12 defines "dangerous instrument" as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."

his initial closing argument or his rebuttal.[4] The lack of any debate at trial as to whether Jones's SUV constituted a dangerous instrument suggests that the issue was never seriously disputed and that plain-error relief is not warranted.

■ We note that defense counsel asked for and received a lesser-included instruction of third-degree assault. Third-degree assault, as opposed to second degree, does not require the use of a dangerous instrument. However, simply asking for a lesser-included instruction does not suggest that the defense "seriously disputed" the differential element between these instructions. Our Supreme Court has held that a criminal defendant is entitled to a lesser-included instruction even if the differential element is not "in dispute"—let alone in serious dispute. State v. Jackson, 433 S.W.3d 390, 405 (Mo. banc 2014). Here, defense counsel referenced the distinction between second- and third-degree assault (the "dangerous instrument" element) in closing argument, but stopped short of arguing that Jones's SUV was not a dangerous instrument. Instead, defense counsel immediately maintained that Jones was not guilty of either assault offense because he had no intent to physically injure anyone. Even under the State's theory, defense counsel continued to argue, Jones's purpose in striking Davis's vehicle simply was to evade capture. Thus, defense counsel concluded, "That means he's not guilty of assault at all. Not second degree, not third degree, he is not guilty of the assault by [the] Court's instructions." We remain unpersuaded that Jones seriously disputed the "dangerous instrument" element of the assault charge at trial.

Jones contends that Instruction No. 5 affected the verdict because, during deliberations, the jury requested clarification of the difference between second- and third-degree assault and verification that the corresponding verdict directors (Instruction Nos. 5 and 6) were correctly worded. In Jones's view, the jury's questions suggest that the jury was confused and needed the proper definition of "dangerous instrument." Given our standard of review, we find this argument unavailing. The trial court (without objection from either party) explained to the jury that the "dangerous instrument" element was the only difference between the two assault verdict directors. The jury then convicted for second-degree assault, finding that Jones's SUV was a dangerous instrument. The jury's questions about the instructions do not suggest that the omitted definition affected the jury's verdict, nor do said questions alter the fact that Jones never seriously disputed the "dangerous instrument" element at trial.

Defense counsel had every opportunity to submit the definition of a "dangerous instrument" to the jury, both during the instruction conference and in response to the jury's questions. Defense counsel never asked that the definition be given. We simply cannot conclude that the trial court's erroneous instruction so misdirected the jury that the error affected the verdict. Beeler, 12 S.W.3d at 300. Because Jones never seriously disputed at trial that his SUV constituted a dangerous instrument, the trial court's error in not defining the term "dangerous instrument" in Instruction No. 5 does not warrant reversal under plain-error review. Point Three is denied.

## Conclusion

The judgment of the trial court is affirmed.

---

4. We also note that Jones does not challenge the sufficiency of the evidence in Point One with regard to the "dangerous instrument" element.

James M. Dowd, P.J., concurs.

Gary M. Gaertner, Jr., J., concurs.