

# Missouri Court of Appeals
## Southern District

### Division One

STATE OF MISSOURI, )
         )
     Plaintiff-Respondent, )
         )
v. )    No. SD36600
         )    Filed:  February 1, 2021
RICARTE SOLIBEN, )
         )
     Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David Jones, Circuit Judge

### **AFFIRMED**

Ricarte Soliben (Defendant) appeals from his convictions of the class E felony of domestic assault in the third degree and the class A misdemeanor of domestic assault in the fourth degree, after a jury found him guilty of both offenses.  *See* § 565.074; § 565.076.[1] Defendant is representing himself on appeal, as he did below.  While that is his right, he is required to follow the same rules of procedure as an attorney.  ***Kline v. Casey's General Stores, Inc.***, 998 S.W.2d 140, 141 (Mo. App. 1999).  Though we recognize the problems

---

[1]  All statutory references are to RSMo (2016).  All rule references are to Missouri Court Rules (2020).

faced by self-represented litigants, we cannot relax our standards for non-lawyers. ***Gibson v. Rice***, 571 S.W.3d 232, 233 (Mo. App. 2019). "It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties." ***Sutton v. Goldenberg***, 862 S.W.2d 515, 517 (Mo. App. 1993). Defendant presents four points on appeal. Finding no merit in any of them, we affirm the trial court's judgment.

*Procedural Background*

In July 2019, the State filed a two-count information alleging that Defendant committed the following offenses:

> Count 1: the class D felony of domestic assault in the second degree, in violation of § 565.073, by knowingly causing "physical injury" to family or household member T.S. by choking her; and

> Count 2: the class A misdemeanor of domestic assault in the fourth degree, in violation of § 565.076, by recklessly causing "physical pain" to family or household member K.C. by shoving him.

A public defender was appointed to represent Defendant. Thereafter, Defendant filed a motion asking leave to proceed *pro se*. After conducting a hearing and receiving Defendant's written waiver of counsel, the trial court granted the motion and permitted appointed counsel to withdraw.

Defendant's jury trial commenced in January 2020. At the instruction conference, the trial court decided to give Instruction No. 6. This instruction, which was requested by the State, submitted the lesser-included offense of domestic assault in the third degree. *See* § 565.074. In relevant part, this instruction hypothesized that Defendant committed the offense by "knowingly caus[ing] physical pain to T.C. by grabbing [her] neck[.]"

The jury found Defendant: (1) not guilty of second-degree domestic assault; (2) guilty of the lesser-included third-degree domestic assault; and (3) guilty of fourth-degree

2

domestic assault. Thereafter, the trial court imposed the jury's recommended sentences of two years in prison for third-degree domestic assault and six months in jail for fourth-degree domestic assault.

For ease of analysis, we will include the facts relevant to each of Defendant's four points in our discussion and disposition of the issues presented.

*Point 1*

Defendant's first point challenges the sufficiency of the evidence to support his convictions for third-degree and fourth-degree domestic assault. On appeal, sufficiency of the evidence is reviewed on the merits, regardless of whether that issue was raised at trial. ***State v. Claycomb***, 470 S.W.3d 358, 361-62 (Mo. banc 2015). "Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." ***State v. Lammers***, 479 S.W.3d 624, 632 (Mo. banc 2016).[2] An appellate court considers all evidence in the light most favorable to the verdict, and grants the State all reasonable inferences. ***Id***. Contrary evidence and inferences are disregarded. ***Id***. "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." ***State v. Nash***, 339 S.W.3d 500, 509

---

[2] In Defendant's point, he also contends the jury could not find him guilty of either submitted offense unless the State proved the existence of probable cause to arrest him or obtain an arrest warrant. Defendant cites no authority supporting this contention, and we are aware of none. Based upon our review of § 565.074 and § 565.076, the existence of probable cause to arrest is not an element of either offense. Therefore, we need not address that issue to determine whether the evidence is sufficient to support each of Defendant's convictions. *See* ***Lammers***, 479 S.W.3d at 632.

(Mo. banc 2011) (internal quotation marks omitted); *see* **State v. Bateman**, 318 S.W.3d 681, 687 (Mo. banc 2010). We defer to the fact-finder's "superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." **State v. Lopez-McCurdy**, 266 S.W.3d 874, 876 (Mo. App. 2008). Viewed from this perspective, the following evidence was adduced at trial.

Defendant and T.C. were married in November 2018. T.C. had three children from a previous marriage: a 22-year-old son, K.C.; a 19-year-old daughter; and a 17-year-old daughter. T.C. resided in Springfield, Missouri, with Defendant and the 17-year-old daughter. On December 23, 2018, T.C. drove to Lawrence, Kansas, to pick up K.C. from the University of Kansas so he could spend Christmas at home.

As soon as T.C. got home, she and Defendant got into an argument because Defendant no longer wanted to remain married. Defendant gathered up his things and exited through a kitchen door that led to the garage. He came back and started pounding on the locked interior door. T.C. unlocked the door and told Defendant that he needed to leave. Defendant came inside the house, pushed T.C. against the nearest wall, and pressed his forearm against her throat. Defendant lifted T.C. up, pushed her backwards over a half-wall railing, and started choking her. T.C.'s feet were off the ground, and she struggled to breathe. T.C. was in pain while this was happening.

K.C. heard his mother screaming, so he came up the stairs from the basement to see what was happening. Defendant pushed K.C. against a wall. As K.C. and Defendant struggled, they ended up on a loveseat. Defendant began choking K.C. T.C. yelled at Defendant to let K.C. go. When Defendant did not stop, T.C. called 911. Once T.C. started talking to the police on the telephone, Defendant finally let go of K.C.

4

Springfield Police Officer Caleb Meyers (Officer Meyers) arrived and saw the garage door and the interior door open.  He heard yelling from the house and walked inside.  T.C. was in the kitchen, and K.C. and Defendant were in the living room.  Defendant was yelling and told Officer Meyers that he needed permission to enter the home.  Defendant took up a "confrontational body position" and refused to let Officer Meyers investigate.  Defendant was handcuffed and taken to Officer Meyers' vehicle by a back-up officer.

Officer Meyers interviewed T.C. and K.C.  Officer Meyers saw red marks on the left side of T.C.'s neck and on her back, that were consistent with her description of what had happened.  The officer also saw marks on K.C.'s face, neck and back.  Officer Meyers requested that photos be taken of the marks on both T.C. and K.C.

Defendant challenges the sufficiency of the evidence to support his conviction for third-degree domestic assault.  "A person commits the offense of domestic assault in the third degree if he or she attempts to cause physical injury or knowingly causes physical pain or illness to a domestic victim, as the term 'domestic victim' is defined under section 565.002." § 565.074.1.[3]  "Physical injury" is defined as "slight impairment of any function of the body or temporary loss of use of any part of the body[.]" § 556.061(36).[4]  Defendant argues that the evidence was insufficient to support his conviction because he did not cause physical injury to T.C.  This argument lacks merit.  As noted above, Instruction No. 6 hypothesized that Defendant committed the offense of third-degree domestic assault by knowingly causing "physical pain" to T.C. by grabbing her neck.  Viewed most favorably

[3]  As a spouse, T.C. was a "domestic victim" as used in this statute.  *See* § 565.002(6); § 455.010(7).

[4]  Prior to January 1, 2017, physical injury was defined to mean "physical pain, illness, or any impairment of physical condition[.]" *See* § 556.061(20); ***State v. Jones***, 519 S.W.3d 818, 824 (Mo. App. 2017).

to the jury's verdict, there was evidence that Defendant knowingly caused physical pain to T.C. While arguing with T.C., Defendant pushed T.C. against a wall and started choking her. Her feet were off the ground. She was in pain while this was occurring. Defendant's assault left red marks on the left side of T.C.'s neck and on her back. There was sufficient evidence to support Defendant's conviction for third-degree domestic assault.

Defendant challenges the sufficiency of the evidence to support his conviction for fourth-degree domestic assault. In relevant part, "[a] person commits the offense of domestic assault in the fourth degree if the act involves a domestic victim, as the term 'domestic victim' is defined under section 565.002, and: (1) The person attempts to cause or recklessly causes physical injury, physical pain, or illness to such domestic victim[.]" § 565.076.1(1).[5] Once again, Defendant argues that the evidence was insufficient to support his conviction because he did not cause physical injury to K.C. This argument lacks merit. Viewed most favorably to the jury's verdict, there was evidence that Defendant recklessly caused physical pain to K.C. Defendant pushed K.C. up against a wall and over to a loveseat, where Defendant began choking K.C. This did not stop until T.C. was talking to police on the 911 call. K.C. had abrasions and scratches on his face, neck and back. The jury could reasonably infer that K.C. suffered physical pain while being assaulted by Defendant. There was sufficient evidence to support Defendant's conviction for fourth-degree domestic assault. Point 1 is denied.

*Point 2*

Defendant's second point challenges the denial of Defendant's motion for new trial. The motion alleged that Defendant was entitled to a new trial based on prosecutorial

---

[5] As a family or household member, K.C. was a "domestic victim" as used in this statute. *See* § 565.002(6); § 455.010(7).

misconduct of counsel involving, *inter alia*, false testimony and spoliation of evidence. The following facts are relevant to this point.

The prosecutorial misconduct ground appears to involve statements made by one of the prosecutors during the trial. Defendant did not object to anything said by this prosecutor during her five-page opening statement. The first time Defendant raised this issue was in a sidebar conference after T.C. had completed her testimony. Defendant argued that the prosecutor lied during opening statement because her description about what K.C. observed was untruthful. He asked that the prosecutor be required to disqualify herself. The trial court deferred a ruling on that request because K.C. had not yet testified, so what he observed was not even in evidence. The proceedings returned to open court, and K.C. testified. After his testimony concluded, the trial court denied the motion to disqualify because "it does appear that [the prosecutor's] depiction of [K.C.'s] testimony was accurate." During the State's closing argument, Defendant made no objections. The same is true during the State's four-page closing argument in the sentencing phase of the proceedings.

Defendant's spoliation of evidence ground relates to his home security system video. The system was motion-activated and recorded for approximately one minute after each activation. The system belonged to and was installed by Defendant. T.C. had access to the system. Sometime after the incident occurred, Defendant provided the original security video to the State. The prosecutor returned a copy to Defendant, which he later marked for identification as Defendant's Exhibit B (Ex. B).

The State did not mention the security system video in its opening statement. During Defendant's opening statement, he asked the jurors to "[p]ay attention to the video that I have of the whole incident."

During T.C.'s direct examination, she testified that Defendant had installed the security system when he moved into T.C.'s house. After T.C. was assaulted, a police investigator asked T.C. to check the security video footage. T.C. did not find any recording of the assault. She identified State's Exhibit 3 as a photo of the kitchen that had been taken from the home security video, and it was admitted in evidence.

The State called Springfield Police Officer Tommy Nguyen, who investigated the incident at T.C.'s home. During Defendant's cross-examination, Officer Nguyen was discussing the evidence collected at the scene. Defendant asked whether Officer Nguyen had seen the home security video because "there's video that shows it all." Officer Nguyen then provided the following testimony:

> Video is just a supplemental to help you out. You brought it up that there was video; so I had requested it. You said you wanted to review it first. I gave you my card so that, when you got out, you could provide it. In the meantime, I contacted [T.C.], and she said she had access to the video. But then she reviewed it and said it's pretty much no physical recording on it; so, therefore, she didn't think it was important to provide it.

After the State rested, the trial court advised Defendant that he had the right to present evidence, but it was his decision whether to do so. Defendant did not offer Ex. B or present any other evidence.

During Defendant's closing argument, he asked the jury to "[p]lease just look at all the evidence. They have the pictures, the videos. If you're questioning where are the security videos, that's reasonable doubt. I'll bet you, if they had shown something, they would have been here. It's my system. They're out there." In rebuttal argument, the prosecutor responded to Defendant's argument this way:

> Ladies and gentlemen, there is no video or security camera conspiracy. The defendant told you himself it's his security system. If there was a video that showed what he is saying happened, don't you think you would have seen

8

it already? There isn't a video. It didn't get captured. It's his system. There's no video.

The jury found Defendant guilty of third-degree and fourth-degree domestic assault.

During the jury sentencing phase of the trial, Defendant offered Ex. B, a compact disc, in evidence. It contained seven, one-minute video clips, none of which included a time-stamp. These clips showed the living room and kitchen of T.C.'s home. Defendant claimed that the copy of the video he received back from the prosecutor had "five minutes missing." This alleged "gap" involved the time period between the video clip that showed Officer Meyers putting his hands on Defendant and the next video clip of T.C. and K.C. standing in the kitchen after Defendant had been placed in Officer Meyers' vehicle. Ex. B was admitted and the seven video clips were played for the jury. None of the clips captured the physical altercations between Defendant and T.C. or K.C. In Defendant's closing argument, he said that "the prosecutor yesterday was telling us all that video did not exist. I got that video from him. I got a hand receipt saying I signed it out from him." In rebuttal, the prosecutor argued:

> [A]s I just told you, this is a case about domestic violence and domestic abuse. It is not about a video. … The defendant told you, when he testified, he provided those videos to the State. Afterwards, he downloaded those videos and he provided them. There was not a video of this incident occurring. That's what I've told you from the very beginning.

Ex. B and a video player were sent back with the jury for use during deliberations on recommended sentencing. The jury provided sentencing recommendations, which the trial court followed.

After the trial concluded, Defendant filed his motion for new trial. At the hearing, the trial court announced that it had reviewed the motion. Defendant was asked if there

9

was anything further he wished to present, and he replied: "Not at this time, Your Honor." Defendant's motion for new trial was denied.

In Defendant's brief, he argues that the prosecutor made improper comments to the jury during opening statement, closing argument and the sentencing-phase closing argument. For an allegation of error to be preserved and receive more than plain error review, it must be objected to during the trial and presented to the trial court again in a motion for new trial. *State v. Loper*, 609 S.W.3d 725, 732 (Mo. banc 2020). Because Defendant asserted no contemporaneous objections during the prosecutor's opening statement or closing arguments, these complaints are not preserved for appellate review and can only be reviewed for plain error. *See State v. Ellmaker*, 611 S.W.3d 320, 330-31 (Mo. App. 2020); Rule 30.20.

"[A]ll errors – whether statutory, constitutional, structural, or based in some other source – are subject to the same treatment under this Court's plain error framework." *State v. Brandolese*, 601 S.W.3d 519, 529 (Mo. banc 2020). The threshold issue in plain error review is whether the trial court's error was facially "evident, obvious, and clear." *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (citation omitted). If there was evident error, only then will this Court consider whether that error "resulted in a manifest injustice or miscarriage of justice." *Id*. To obtain a new trial on direct appeal based on a claim of plain error, the defendant must show that the error was "outcome determinative." *Id*.; *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006). An appellate court should not engage in plain error review pursuant to Rule 30.20, unless the defendant meets his or her burden of establishing facially substantial grounds for believing that the alleged error resulted in a manifest injustice or miscarriage of justice. *Brandolese*, 601 S.W.3d at 525-26; *State v. Pulliam*, 606 S.W.3d 243, 245 (Mo. App. 2020).

After reviewing Defendant's argument in Point 2 of his brief, we decline to engage in plain error review of his complaints about the prosecutor's statements. Defendant has not demonstrated that the trial court committed any evident, obvious and clear errors. More importantly, Defendant has not met his burden of demonstrating facially substantial grounds for believing the alleged errors resulted in a manifest injustice or miscarriage of justice. *See **State v. Crider***, 611 S.W.3d 904, 908 (Mo. App. 2020).

Defendant's motion also asserted that he was entitled to a new trial because of the State's alleged spoliation of evidence contained on the home security system video. This issue was presented to the trial court during the trial and carried forward in the motion for new trial, so it was preserved for appellate review. ***Ellmaker***, 611 S.W.3d at 330-31. We review the denial of this aspect of Defendant's motion for new trial for an abuse of discretion. ***State v. Henry***, 568 S.W.3d 464, 477-78 (Mo. App. 2019). We will find an abuse of discretion only when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. ***State v. Shinn***, 420 S.W.3d 619, 627 (Mo. App. 2013).

Defendant's point argues spoliation of evidence by the State's: (1) "intentional negligent withholding" of the video; and (2) "altering" the video. The first argument is based upon his assertion that the State had to admit the security video footage for the jury to see during the guilt phase of the trial. Both T.C. and K.C. provided direct testimony about Defendant's assaults on them. T.C. testified that the home security video did not record those events. Defendant has cited no authority, and we are aware of none, supporting the argument that the State was required to admit the home security video to prove its case. Moreover, as the transcript reveals, Defendant had a copy of the home

11

security video and could have offered it himself, as he later did during the jury sentencing phase of the trial.

Defendant's second argument about "altering" the video fares no better. This appears to be based on his claim that the prosecutor returned to him a "different copy" of the video with "five minutes missing." The trial court was aware of the events relating to how the home security video was generated and preserved. The jury and the court heard T.C.'s testimony that the actual incidents were not captured on the video. When the video was played during the jury sentencing phase of the trial, there is no indication from the transcript that T.C.'s testimony was incorrect. Defendant's complaint about the alleged five-minute "gap" in the recording only related to the time after Officer Meyers arrived. Based on the circumstances before the trial court, we discern no abuse of discretion by the trial court in denying Defendant's motion for new trial. Accordingly, Point 2 is denied.[6]

*Point 3*

Defendant's third point contends the trial court erred by giving Instruction No. 6, which submitted the lesser-included offense of third-degree assault for the jury to consider. The following facts are relevant to this point.

During the instruction conference, the prosecutor asked the court to give an instruction submitting third-degree domestic assault to the jury. Defendant "was adamant that he did not want any lesser included offenses to be given to the jury." The prosecutor responded that the court was required to give a third-degree domestic assault instruction if

---

[6] In Point 2, Defendant further contends that the spoliation of evidence "shifted the burden of proof" denying him a fair trial and due process. Defendant, however, fails to develop that contention with any authority or argument, and as such, it is deemed abandoned and will not be addressed. *State v. Wolford*, 590 S.W.3d 324, 328 n.2 (Mo. App. 2019) ("failure to support a contention raised in a point relied on with authority and argument beyond conclusions is deemed abandonment of that contention").

12

one was requested by the State. Citing MAI-CR 4th 404.11G (2019), the prosecutor argued that Defendant would only have a right to pursue an all-or-nothing strategy if the State failed to request a lesser-included offense instruction. The trial court decided to give Instruction No. 6 over Defendant's objection. As noted above, this instruction hypothesized that Defendant committed the offense by "knowingly caus[ing] physical pain to T.C. by grabbing [her] neck[.]" The jury found Defendant not guilty of second-degree domestic assault and guilty of third-degree domestic assault.

In Point 3, Defendant contends the trial court erred by giving Instruction No. 6. He argues that: (1) he was entitled to pursue an all-or-nothing defense on the second-degree domestic assault count; and (2) third-degree domestic assault is not a nested lesser-included offense of second-degree domestic assault. There is no merit to either prong of his argument.

Our analysis begins with a review of the lesser-included offense rules contained in § 556.046. In relevant part, this statute states:

> 1. A person may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when: …
>
> (2) It is specifically denominated by statute as a lesser degree of the offense charged ….
>
> 3. The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the person of the immediately higher included offense and there is a basis in the evidence for convicting the person of that particular included offense.

*Id*. Missouri statutes create four degrees of the offense of domestic assault: (1) first-degree domestic assault, § 565.072; (2) second-degree domestic assault, § 565.073; (3) third-degree domestic assault, § 565.074; and (4) fourth-degree domestic assault, § 565.076. The State charged Defendant with committing the offense of second-degree domestic

assault, in violation of § 565.073. Third-degree domestic assault is specifically denominated by statute as a lesser degree of the offense charged in the information. *See, e.g.*, *State v. Brown*, 524 S.W.3d 44, 48 (Mo. banc 2017) (third-degree assault is a lesser-included offense of first-degree assault because it is specifically denominated as such by statute); *State v. Greer*, 348 S.W.3d 149, 154 (Mo. App. 2011) (second-degree and third-degree assault are lesser-included offenses of first-degree assault because they are specifically denominated by statute as lesser degrees of the offense charged, per § 556.046.1(2)).

A trial court must give a lesser-included offense instruction when: (1) "a party timely requests the instruction"; (2) "there is a basis in the evidence for acquitting the defendant of the charged offense"; and (3) "there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *State v. Smith*, 522 S.W.3d 221, 225 (Mo. banc 2017); *see also* MAI-CR 4th 404.11G (2019). All these requirements were met here. The State, a party to this proceeding, timely requested Instruction No. 6 at the instruction conference. There was a basis for acquitting Defendant of the second-degree domestic assault charge, which was the immediately included higher offense, because the jury could (and apparently did) disbelieve the State's evidence. *See State v. Roberts*, 465 S.W.3d 899, 901 (Mo. banc 2015). As we held in our discussion of Defendant's first point, there was a basis for convicting him of third-degree domestic assault. Therefore, the trial court's decision to overrule Defendant's objection and give Instruction No. 6 was correct. Because the State timely requested the instruction, Defendant no longer had the option to pursue an all-or-nothing strategy. Third-degree domestic assault is specifically denominated by statute as a lesser degree of the charged offense of second-degree domestic assault. Therefore, the State could request the

14

submission of a third-degree domestic assault instruction, regardless of whether it is a nested lesser-included offense of second-degree domestic assault. For these reasons, Point 3 is denied.

*Point 4*

Defendant's fourth point contends the trial court erred by denying Defendant's motion to dismiss for fraud upon the court, his motion for judgment of acquittal, and his motion for new trial. Defendant argues that these were motions for post-conviction relief that required an evidentiary hearing and an opinion for disposition. This argument fails for at least two reasons.

First, Defendant's argument rests on a false premise. In relevant part, Rule 29.15(a) authorizes the filing of a post-conviction relief motion under the following circumstances:

> A person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15.

*Id*. Defendant's motions sought relief from the trial court while the criminal case was still pending, and prior to the imposition of any convictions or sentences. Because Defendant's motions did not seek post-conviction relief, there was no requirement that the trial court hold an evidentiary hearing or issue an opinion.

Second, none of the motions filed by Defendant asked the trial court to conduct an evidentiary hearing or write an opinion. Defendant did not make either request at the hearing on the motion for new trial, even when asked by the trial court whether there was anything else Defendant wished to present. "We cannot convict the trial court of

15

committing error with respect to an issue the court was not asked to decide." ***Byrne v. Moore***, 332 S.W.3d 864, 867 (Mo. App. 2011). Point 4 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCUR

WILLIAM W. FRANCIS, JR., J. – CONCUR